**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Robert Steven HUTCHINSON, Appellee.**

Superior Court of Pennsylvania.

Argued March 18, 2008.

Filed April 25, 2008.

Jonathan H. Kurland, Asst. Dist. Atty., for Com., appellant.

Amy Jo Shaffer, Reading, for appellee.

BEFORE: STEVENS, LALLY–GREEN, and FITZGERALD *, JJ.

OPINION BY STEVENS, J.:

¶ 1 The instant action is an appeal from an Order of Court entered in the Court of Common Pleas of Berks County on June 15, 2007, at which time the trial court granted the renewed Motion for Judgment of Acquittal of Appellee Robert Steven Hutchinson (hereinafter "Appellee") after his jury trial conviction. We vacate the order of the trial court and remand for reinstatement of the judgment of sentence.

¶ 2 Following a jury trial which commenced on July 14, 2004, Appellee was found guilty of Possession of a Controlled Substance (cocaine)[1] and Possession with the Intent to Deliver a Controlled Substance (cocaine) (PWID).[2] The Commonwealth (hereinafter "the Commonwealth") invoked the mandatory minimum sentence of two (2) years to four (4) years under 18 Pa.C.S.A. § 6317(a) relating to drug transactions that take place within a school zone and a mandatory minimum sentence due to

* Former Justice specially assigned to the Superior Court.

1. 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(30).

the quantity of cocaine involved. Appellee was sentenced to two (2) years to four (4) years in prison.

¶ 3 Appellee appealed his judgment of sentence, and on April 26, 2005, this Court reversed the same and remanded the matter for a new trial upon finding the trial court erred in permitting Criminal Investigator Jose A. Colon to testify as a fact witness and as an expert witness at trial. *Commonwealth v. Hutchinson,* No. 1464 MDA 2004, 876 A.2d 464 (Pa.Super. filed April 26, 2005) (unpublished memorandum).

¶ 4 Following the presentation of all evidence during a new trial which commenced on June 14, 2007, Appellee moved for a judgment of acquittal which the trial court denied. N.T., 6/15/07, at 120.[3] On June 15, 2007, the jury convicted Appellee of the two aforementioned crimes, and Appellee renewed his motion for judgment of acquittal. N.T., 6/15/07, at 123. The trial court inquired whether the Commonwealth intended to invoke the mandatory minimum sentence, after which the Commonwealth indicated it would be invoking "a school zone mandatory as well as a weight mandatory." N.T., 6/15/07, at 123. The trial court then granted Appellee's motion. N.T., 6/15/07, at 125.

¶ 5 On June 29, 2007, the Commonwealth filed a timely appeal to this court. On July 3, 2007, the trial court ordered the Commonwealth to file its Concise Statement of Matters Complained of on Appeal. The Commonwealth filed the same on July 17, 2007. On July 24, 2007, the trial court filed its Memorandum Opinion.

¶ 6 In its brief, the Commonwealth raises a single issue for our review:

Whether the trial court erred in granting [Appellee's] motion for judgment of acquittal after the jury found

him guilty and where the evidence was sufficient to support the elements of the charges?

Brief for the Commonwealth at 4.

¶ 7 In support of its decision to grant Appellee's motion for Judgment of Acquittal, the trial court stated the following:

In the instant case, the Commonwealth's evidence suggesting that [Appellee] had constructive possession of the cocaine is speculative at best.

First, since Edwin Luberes claimed that he was the one in the pavilion on the night in question and he was dressed in a similar manner to [Appellee] there is arguably a question as to who [sic] police saw in the pavilion.

However, even assuming it was [Appellee] in the pavilion, it requires a leap of the imagination to find that he was actually aware of the cocaine's presence, let alone that he possessed the requisite power and intent to control it. While Reading Police Officers Wise and Mayer testified that they witnessed [Appellee] walk over to the pavilion, reach toward the rafter area, and then turn and walk back to the park bench, none of the officers present that night saw anything in [Appellee's] hand and no drugs were found on his person. [Appellee's] contact with the rafters was estimated to be a mere second.

"Where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." *Commonwealth v. Bricker,* 882 A.2d 1008, 1016 (Pa.Super.2005) (citation omitted). The drugs at issue here were found in a public park that was described by police as a high crime area where illegal drug transactions were common and where numerous

**3.** The same trial court presided over each proceeding.

people besides [Appellee] had access to the pavilion where the cocaine was found. Under these circumstances, [Appellee's] mere presence in the pavilion and proximity to the drugs is insufficient to establish [Appellee's] knowledge of the cocaine or his intent to control it.

While [Appellee] need not prove its case to a mathematical certainty, a conviction must be based on more than mere suspicion or conjecture. *Commonwealth v. McFadden*, 850 A.2d 1290, 1293 (Pa.Super.2004). Here, this [c]ourt concluded that the evidence was too weak and inconclusive for the Commonwealth to meet its burden by proving beyond a reasonable doubt that [Appellee] possessed the cocaine.

Trial Court Opinion, filed 8/3/07, at 4–5. As we shall discuss, *infra,* upon our review of the record, we disagree.

¶ 8 During the jury trial, the Commonwealth presented the testimony of Police Officer Michael Wise.[4] Officer Wise testified that on August 1, 2003, at approximately 9:35, he was on duty and in the Two Hundred Block of Schuylkill Avenue in Reading at which time he observed two males sitting on a bench in Barbey's Playground, one of whom was counting money; the playground was closed at the time. N.T., 6/14/07, at 11–13. As Officer Wise and two other officers approached the men, Appellee got up and walked approximately twenty-five yards away to a pavilion where he reached up to the top of a pole which secured the roof. *Id.* at 16. Appellee returned to the bench, and the officers continued to approach. When he noticed the officers, Appellee ran north on Schuylkill Avenue, and a short foot pursuit

ensued. *Id.* at 18. Officer Wise explained lighting from Schuylkill Avenue illuminated the pavilion which was located fifty feet from the sidewalk. *Id.* at 19–20. Officer Wise testified only the officers and the two males on the bench were in the park that evening. *Id.* at 22–23.

¶ 9 After Appellee was apprehended and taken into custody, Officer Wise returned to the same location in the pavilion where he had seen Appellee earlier. Officer Wise searched the area and recovered twenty-two packets of suspected crack cocaine encased in a plastic lunch bag. *Id.* at 19.

¶ 10 Criminal Investigator[5] Jose A. Colon testified he accompanied Officer Wise on August 1, 2003, and as they and two other officers were driving in an unmarked minivan in the Two Hundred Block of Schuylkill Avenue, he observed two men sitting on a bench on the outskirts of Barbey's Playground one of whom was counting money. *Id.* at 29–31. Detective Colon, aware that past drug arrests had been made in the area, suspected drug activity may be occurring in the playground because the two men were in the playground after it had closed while one was counting money in plain view. *Id.* at 32–33. Detective Colon and his colleague, Detective Pat Leporace, decided some officers would be dropped off on the rear side of the park, while the remaining ones would wait on the other side of the street. *Id.* at 33. Each Officer was wearing his "vice uniform tackle shirt" which displays police badges on both shoulders as well as on the chest and the words "Reading Police" on the back in bright, yellow letters. *Id.* at 34–35. Detective Colon observed Appellee

---

4. Officer Wise had been killed in the line of duty prior to the commencement of the first trial and was, therefore, unavailable to testify at trial in 2007. His prior testimony from the Omnibus Pretrial Hearing was admitted into

evidence and read into the record by the trial court's Judicial Coordinator.

5. This title is synonymous with Detective. N.T., 6/14/07 at 26–27.

walking toward the pavilion and instructed the other officers to watch him, while he continued to observe the man who remained on the bench. *Id.* at 35–36. Appellee eventually returned to the bench, and feeling comfortable the officers had not been detected, Detective Colon initiated contact with the men, at which time Appellee started running north on Schuylkill Avenue while his companion remained seated at Officer Colon's direction. *Id.* at 38–39.

¶ 11 Detective Pasquale Leporace, a criminal investigator assigned to the vice division in Reading, testified that prior to August 1, 2003, he had been in the area of Barbey's Playground "many times" as "Barbey's Playground is a playground, unfortunately, where you can go buy drugs out in the open." *Id.* at 50–52. Wearing his ballistic vest with the word "police" displayed on it, Detective Leporace accompanied the others to the playground. He corroborated the testimony of Officer Wise and Detective Colon regarding the encounter and stated that Appellee ultimately ran into the hood of the blue minivan that he was driving, after which he placed Appellee in handcuffs. *Id.* at 54–57. Upon learning the other officers uncovered "items" in the rafters of the pavilion, Detective Leporace initiated a search of Appellee's person during which he uncovered $110.00 in cash from Appellee's pants pocket. *Id.* at 57–58.

¶ 12 Officer Christopher J. Mayer testified he observed Appellee leave the bench, walk over to a wooden pavilion, **reach up into the rafter area,** and return to the bench. **No other civilians were in the park at the time.** *Id.* at 66 (emphasis added). Officer Mayer joined in the chase of Appellee during which he heard Officer Wise shout, "stop, police." *Id.* at 67–68. After Appellee was apprehended, Officer Mayer accompanied Officer Wise to the pavilion where the latter stepped onto the picnic bench upon which Appellee had stood earlier, illuminated the area with his flashlight and pulled from a support beam a plastic sandwich bag containing twenty-one small, purple-colored packets and one small, yellow packet of suspected crack cocaine. *Id.* at 69–71. As Officer Mayer was taller than Officer Wise, he double checked the area to ensure no additional contraband had been hidden but uncovered nothing. *Id.* at 72.

¶ 13 The parties stipulated that the chain of custody of the controlled substances remained intact and that if called to testify, Larissa S. Sorochka, an expert in the field of forensic chemistry, would testify the items in the bag Officer Wise retrieved were cocaine. *Id.* at 81–82.

¶ 14 The parties further stipulated that Criminal Investigator Nelson Ortiz would testify as an expert in the field of narcotics, the general drug trade in the city of Reading and the packaging, distribution and delivery of drugs. *Id.* at 86. Detective Ortiz opined the crack cocaine seized in the instant matter was possessed with the intent to deliver it. In support of this opinion, he noted drugs are readily available in the Two Hundred Block of Schuylkill Avenue, and Barbey's Playground in particular. He also found remarkable the manner in which the crack cocaine had been packaged. For example, he explained he had personally conducted undercover drug buys in the Playground and that the tiny packets were "dime bags" which normally hold a tenth of a gram of crack cocaine and sell for ten dollars on the streets of Reading. *Id.* at 88. He explained he had posed as a drug dealer in past investigations and found that users normally purchase and possess only one or two such packets, while a dealer is likely to possess a considerable amount comparable to the twenty-two packets recovered

from the rafters in the pavilion where the officers had seen Appellee reaching. *Id.* at 89. Detective Ortiz further remarked that the total gram weight of the bag, 3.47, would be known as an "eight ball" meaning it is an eighth of an ounce, and could normally sell for one hundred to one hundred twenty dollars on the streets of Reading. *Id.* at 91. In addition, the crack cocaine likely was packaged for sale, as dealers typically encase small packets in a larger sandwich bag for ease of handling and discarding if they are being pursued by police. *Id.* at 90. Detective Ortiz also found noteworthy that paraphernalia necessary to ingest the substance was not found in the area or on Appellee and that some of the denominations of the one-hundred ten dollars that Appellee did possess were ten dollar bills, the cost of one dime bag of the crack cocaine. *Id.* at 91.

¶ 15 Mr. Edwin Luberes testified for the defense that he was fourteen on August 1, 2003, and sitting with Appellee discussing college, as Appellee was a senior in high school at the time. *Id.* at 98–100, 103. The two were similarly dressed, and both wore a baseball cap. *Id.* at 100. Mr. Luberes testified that he, not Appellee, walked over to the pavilion to do chin ups on a bar located within it. *Id.* at 101. Mr. Luberes explained the officers who approached wore different colored tops, and their identity as officers was not apparent until the pair saw a police vehicle. *Id.* at 102. Mr. Luberes stated Appellee never counted money, and that if officers testified he had been, or claimed Appellee went to the pavilion, they were lying. *Id.* at 106–108. Mr. Luberes considered Appellee a friend. *Id.* at 104–105.

¶ 16 Appellee testified in his own defense that he was working for J.P. Mascaro's trash company and as August 1, 2003, was a Friday, he had received a paycheck and any money he might have counted was from that paycheck. *Id.* at 110–111. Appellee claimed he never went to the pavilion, but Mr. Luberes did. He claimed he ran when he saw the gun on the individual who touched Mr. Luberes, as Appellee, unaware the man was a police officer, thought the man was going to rob them. *Id.* at 112. Appellee claimed the officers were dressed in plain clothes, and he never saw a badge on their shirts or vests, as it was dark outside. *Id.* at 112. Appellee stated he stopped running when the individuals identified themselves as police officers and that he did not sell any drugs that day. *Id.* at 113–114. On cross-examination, Appellee could neither provide a name of a supervisor nor an address for J.P. Mascaro. *Id.* at 115. Contrary to Mr. Luberes's testimony, Appellee also stated he probably was counting money. *Id.* at 118.

¶ 17 When considering Appellant's claim the trial court abused its discretion in granting Appellee's renewed motion for judgment of acquittal following his jury trial conviction, we are guided by the following precedent:

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances estab-

lished by the Commonwealth need not preclude every possibility of innocence. *Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.* The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super.2006) (citations omitted) (emphasis added), appeal denied, 592 Pa. 778, 926 A.2d 972 (2007); *see also Commonwealth v. Stevenson*, 894 A.2d 759, 773 (Pa.Super.2006) (citations and quotations omitted), *appeal denied*, 591 Pa. 691, 917 A.2d 846 (2007); *Commonwealth v. Whitacre*, 878 A.2d 96, 99 (Pa.Super.2005), *appeal denied*, 586 Pa. 750, 892 A.2d 823 (2005) (stating that when assessing the evidence and all reasonable inferences drawn therefrom in a light most favorable to the Commonwealth as the verdict winner, if the fact-finder could have found that every element of the crime charged had been proven beyond a reasonable doubt, the evidence is *ipso facto* sufficient to sustain a conviction for that crime). In addition, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at

the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted) (emphasis in original).

¶ 18 To prove a defendant guilty of possession of a controlled substance (cocaine) and possession with the intent to deliver a controlled substance (cocaine), the Commonwealth was required to prove beyond a reasonable doubt that Appellee possessed a controlled substance and that he did so with the intent to deliver that substance to another person. The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case including the manner in which the drugs were packaged, the form of the drug and the behavior of the defendant. *Commonwealth v. Conaway*, 791 A.2d 359, 362–363 (Pa.Super.2002) (citations omitted). Where, as herein, the contraband is not found on the accused's person, the Commonwealth must demonstrate he had constructive possession of the same, or that the individual had the ability and intent to exercise control or dominion over the substance. *Commonwealth v. Dargan*, 897 A.2d 496, 503, 504 (Pa.Super.2006), *appeal denied*, 591 Pa. 671, 916 A.2d 1101 (2007).

¶ 19 While the cocaine was not found on Appellee's person, viewed most favorably to the Commonwealth as verdict winner, the evidence herein clearly supported the jury's finding he constructively possessed the twenty-two packets of cocaine. The testimony established Appellee and Mr. Luberes were the only individuals in Barbey's Playground, an area where drugs are commonly purchased and sold, on August 1, 2003, after it had closed. Officers Wise and Mayer and Detective Leporace witnessed Appellee walk to a pavilion and place his hand in the rafters

where Officer Wise later recovered the crack cocaine. No other drugs were found in the rafters. In addition, the officers observed Appellee counting money on the park bench. Also, when the officers approached Appellee and Mr. Luberes, Appellee fled, and the jury could properly consider this behavior when determining Appellee's possession of the contraband. *See Conaway, supra.* Based upon this evidence, a reasonable jury could conclude that Appellee had the ability and intent to exercise conscious control and dominion over the cocaine that was in the rafters of a pavilion when only he had access to the same at the relevant time on the evening in question. *Commonwealth v. West,* 937 A.2d 516, 524 (Pa.Super.2007). As such, the trial court erred in granting Appellee's motion for judgment of acquittal.

¶ 20 In *Commonwealth v. Ratsamy,* 594 Pa. 176, 180–185 934 A.2d 1233, 1236–1238 (2007), after concluding a panel of this Court misapplied the governing substantive standard of review, re-weighed the evidence and disregarded evidence believed by the fact-finder which had been sufficient to support a conviction for Possession with Intent to Deliver, the Pennsylvania Supreme Court reversed this Court's decision finding the evidence was insufficient to support such a conviction and remanded the matter for the reinstatement of the judgment of sentence. Interestingly, the panel had utilized language similar to that which the trial court articulated in its Opinion herein when determining "the Commonwealth's expert opinion represents a leap that is not corroborated by other independent evidence[,]" and "[i]t is also a leap that does not appear to be totally justified by logic." *Id.* at 180–182, 934 A.2d at 1236. In support of its decision to reverse, the Supreme Court noted:

It was incumbent upon the Superior Court to consider all of the evidence introduced at the time of trial, and apparently believed by the fact finder, including the expert's testimony. In applying this standard, the reviewing court must bear in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's ruling thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. The Superior Court here failed to afford the prevailing party below the full effect of its having prevailed upon an issue in the trial court.

We hold that, under the proper standard, the evidence was sufficient to sustain appellee's conviction of PWID.... Relevant factors in this case were appellee's possession of the loaded handgun, his interaction with the suspect who was the subject of the narcotics surveillance, the absence of drug use paraphernalia, the location, the 199 unused zip-lock bags, and the quantity of U.S. currency. [P]ossession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption.

*Id.* at 183–184, 934 A.2d at 1237–1238 (some citations and quotations omitted).

¶ 21 Herein, the trial court completely ignored the aforementioned standard of review, as it failed to view the evidence in a light most favorable to the Commonwealth as the verdict winner, selectively excluded key police testimony and then reweighed the remaining evidence to reach a contrary conclusion to that of the jury. Moreover, the trial court also disregarded Detective Ortiz's opinion that Appellee

possessed the crack cocaine with the intent to deliver the same and instead chose to "deem incredible that which the fact-finder deemed worthy of belief." *Ratsamy, supra*, 594 Pa. at 182, 934 A.2d at 1236. Furthermore, the trial court ignored the evidence presented by numerous police officers that Appellee was the only individual counting money and stirring about the pavilion where the crack cocaine was recovered. In addition, Appellee himself acknowledged he had been counting money, contrary to the testimony of his friend, Mr. Luberes. The jury obviously believed the officers' testimony which clearly was sufficient to support a guilty verdict.

¶ 22 Indeed, the trial court itself acknowledged there was "arguably a question as to who [sic] police saw in the pavilion," yet usurped the ability to answer that question from the jury as the fact-finder. Nevertheless, the trial court ultimately assumed Appellee was the person in the pavilion for the sake of its argument and determined that Appellee's presence in it and proximity to the drugs were insufficient to establish his constructive possession of the contraband. This conclusion is improper, as the jury was free to find otherwise, based upon the evidence presented at trial. It is not for the trial court to deem incredible that which the jury found worthy of belief. *Ratsamy*, 594 Pa. at 182, 934 A.2d at 1236.

¶ 23 As such, we conclude that the trial court misapplied the standard for granting Appellee's motion for judgment of acquittal. The order of the trial court is therefore vacated and the matter remanded for reinstatement of the judgment of sentence.

¶ 24 Order vacated; matter remanded.