J-S47019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DESMON M. RAMOS, | |
| Appellant | No. 1983 EDA 2013 |

Appeal from the Judgment of Sentence of June 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010516-2010
CP-51-CR-0010517-2010

BEFORE: MUNDY, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 13, 2014**

Appellant, Desmon M. Ramos, appeals from the judgment of sentence entered on June 12, 2013. We affirm.

The trial court has ably summarized the underlying facts and procedural posture of this case. As the trial court explained:

> The first complainant, [W.D.], testified that on August 4, 2010, at approximately 4:40 in the afternoon[,] he was [traveling] home on the trolley along Woodland Avenue from his workplace in [Center City Philadelphia]. Seated next to [W.D.] on the two-seat bench was [Appellant]. [W.D.] testified that he was tired and was falling in and out of sleep, but that he remembered being awakened by the mumbling of [Appellant]. [W.D.] was awakened again when [Appellant], who was seated next to the window, asked [W.D.] to get up so that [Appellant] could pass him. [W.D.] awoke a third time to find [Appellant leaning] over him and trying to attack the man directly behind him. [W.D.] testified that [Appellant] was holding an object in his hand and making an overhead "stabbing motion."

[W.D.] testified that he grabbed [Appellant's] arm in an attempt to secure the object [Appellant] was holding. [Appellant] then moved toward the door of the trolley and literally dragged [W.D.] with him. [W.D.] wrapped [Appellant's] arm around a pole on the trolley and held it there until [Appellant] dropped the object, which [W.D.] identified as a flat-head [screwdriver] with a black and yellow handle. Once [Appellant] dropped the [screw driver, W.D.] released his grip, and [Appellant] fled. [W.D.] received a cut on his hand during the attack.

The second complainant, [A.D.], testified that on August 4, 2010, he was sitting on the trolley directly behind [W.D.,] along with a female friend who was sitting behind [Appellant]. [A.D.] testified that he was "minding his own business" while [Appellant] spoke to [W.D.] and to his friend. [A.D.] testified that [Appellant] gave him "mean staring looks."

[A.D.] testified that when the trolley came to a stop at 53rd Street[, Appellant] asked [W.D.] if he could pass him, but then suddenly "jumped over" [W.D] and attacked [A.D.]. During the attack[, Appellant] made a "stabbing motion" and tried to "cut" and "stab" [A.D.] with a sharp object. [A.D.] suffered a small cut on [his] wrist as a result. [W.D.] subdued [Appellant], who then fled the trolley. After the police arrived[, A.D.] was asked to accompany an officer in his vehicle to identify [Appellant], who had been detained.

Philadelphia Police Officer Kenneth Sherard testified that at approximately 4:40 p.m. on August 4, 2010[,] he responded to a call of a reported stabbing at 53rd and Woodland Avenue. On arrival[,] Officer Sherard observed [W.D], who had blood on his hands, and [A.D.], who had puncture wounds on his left forearm. Officer Sherard recovered a [screwdriver] from [W.D.,] which had an orange and black handle and was approximately eight inches long. After taking a description from [W.D.] and [A.D.], Officer Sherard put out flash information describing the suspect. Upon receiving word that [Appellant] had been apprehended[,] Officer Sherard drove [A.D.] approximately a block away, whereupon [A.D.] identified [Appellant].

- 2 -

Philadelphia Police Detective Keith Scott testified that on the day of the assault he was on foot patrol in the vicinity of 53rd and Woodland when he received a call to investigate a stabbing incident. Shortly afterward he and his partner detained [Appellant], who matched the description of the assailant, and held [Appellant] until [A.D.] was brought to the scene and made a positive identification.

. . .

On August 4, 2010, [Appellant] was arrested and charged [with two counts each of]: (1) aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(4), (2) possession of an instrument of a crime with intent to employ it criminally pursuant to 18 Pa.C.S.A. § 907(a), (3) simple assault pursuant to 18 Pa.C.S.A. § 2701(a), [and] (4) recklessly endangering another person [(hereinafter "REAP")] pursuant to 18 Pa.C.S.A. § 2705. . . .

[Appellant proceeded to a bench trial. With respect to Appellant's attack upon A.D., the trial court found Appellant guilty of aggravated assault, simple assault, and REAP, but not guilty of possession of an instrument of crime. With respect to Appellant's attack upon W.D., the trial court found Appellant guilty of possession of an instrument of crime, and the trial court entered a judgment of acquittal prior to disposition on the aggravated assault, simple assault, and REAP charges].

On June 12, 2013[, the trial court sentenced Appellant] to concurrent [terms] of five years['] probation on the [possessing an instrument of crime conviction] and five years['] probation on the [aggravated assault conviction], for a total [sentence] of five years['] probation. No sentence was imposed on [the simple assault and REAP convictions, as the trial court believed that the crimes] merged with the charge of aggravated assault.

Trial Court Opinion, 12/19/13, at 1-4 (some internal citations and capitalization omitted).

Appellant filed a timely notice of appeal. Appellant raises one claim before this Court:

> Did not the trial court err in finding [Appellant] guilty of [REAP] in that there was insufficient evidence that [Appellant] engaged in conduct that placed [A.D.] in danger of death or serious bodily injury?

Appellant's Brief at 3.

We review Appellant's sufficiency of the evidence claim under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

Our Crimes Code defines REAP as follows:

> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Further, we have held that "[t]he crime of REAP is a crime of assault which requires the creation of danger. As such, there must be an actual present ability to inflict harm. . . . [T]he mere apparent ability to inflict harm is not sufficient. Danger, and not merely the apprehension of danger, must be created." ***Commonwealth v. Reynolds***, 835 A.2d 720, 727-728 (Pa. Super. 2003) (internal quotations and citations omitted).

According to Appellant, the evidence was insufficient to support his REAP conviction because "there was no evidence that there was a danger of death or serious bodily injury" to A.D. Appellant's Brief at 10. Specifically, Appellant argues that, since A.D.'s actual injuries were minor, the trial court could not have found Appellant guilty of REAP. ***Id.*** Appellant's claim fails.

At the outset, Appellant is incorrect to claim that he could not have been convicted of REAP simply because A.D.'s **actual injuries** were minor. Indeed, Section 2705 is satisfied where a defendant's conduct "places or may place another person **in danger of** death or serious bodily injury." 18 Pa.C.S.A. § 2705 (emphasis added). Thus, under the plain terms of the

statute, a REAP conviction is supportable even where the victim suffered no actual injury whatsoever. ***Commonwealth v. Rahman***, 75 A.3d 497, 502-503 (Pa. Super. 2013) (evidence was sufficient to support REAP conviction where the defendant "thr[ew] punches at [a police officer] on a stairwell on a crowded balcony next to a glass divide;" although the officer did not actually fall down the stairs, the evidence was sufficient to place the officer "in danger of death or serious bodily injury" because the defendant's actions "easily could have caused [the officer] to lose his footing and fall down the stairs"); ***Commonwealth v. Hartzell***, 988 A.2d 141, 143-144 (Pa. Super. 2009) (explaining that the evidence was sufficient to support the appellant's two REAP convictions because: "The testimony established that from a distance of approximately 30 yards, appellant fired into the creek near the bridge, approximately 25 to 30 feet away from the [victims'] location on the bridge. Although appellant may not have pointed the weapon directly at the two [victims], it was pointed in their general direction. Moreover, the evidence established that the water was rather shallow and there were rocks in the stream. . . . Thus, it is hardly inconceivable that a bullet fired into the stream nearby could have struck a rock or other object and deflected up and hit one of the two men"); ***Reynolds***, 835 A.2d at 729 (pointing a loaded gun at an individual created the danger of death or serious bodily injury and the evidence was thus sufficient to support the defendant's REAP conviction).

In the case at bar, even though A.D.'s actual injuries were minor, Appellant's act of repeatedly stabbing at – and actually stabbing – A.D. with

a sharp, eight-inch-long screwdriver in close quarters constituted conduct that "place[d] or may [have] place[d] [A.D.] in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. As the trial court so well explained:

> The Commonwealth presented convincing evidence from two eyewitnesses that [Appellant], without provocation, aggressively attacked [A.D.]. The instrument used for the attack was an [eight-inch-long screwdriver], which was sharp enough to pierce the skin of [W.D.] and [A.D.] during the incident. This [screwdriver] was clearly capable of being a dangerous weapon when used in the manner employed by [Appellant]. The violent and intentional nature of the assault is demonstrated by [Appellant's act of] raising the weapon over his head and bringing it down on [A.D.] in a "stabbing motion." [A.D.] was fortunate that [Appellant's] thrusts did not inflict more serious injury and that [W.D.] was able to quickly subdue [Appellant], but the evidence presented was more than sufficient to show that [Appellant's conduct "placed . . . [A.D.] in danger of death or serious bodily injury"]. Therefore, the evidence was sufficient for the [trial court] to find beyond a reasonable doubt that [Appellant's] conduct placed [A.D.] in danger of such injury.

Trial Court Opinion, 12/19/13, at 6.

We agree. Appellant's claim on appeal thus fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2014

- 7 -