J. S71011/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GEORGE NATHANIEL GREEN, | : | No. 441 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 12, 2013,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0003983-2012

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 23, 2015**

Appellant, George Nathaniel Green, appeals his judgment of sentence entered April 12, 2013, in the Court of Common Pleas of Dauphin County. Following a jury trial, appellant was convicted of one count of unlawful delivery of a controlled substance and one count of unlawful possession of drug paraphernalia.[1]  Appellant challenges the sufficiency of the evidence on the above convictions.  We affirm.

The factual history has been summarized by the trial court as follows:

> At trial, the Commonwealth presented the testimony of Detective Donald Heffner ("Det. Heffner") and Officer Kelly English ("Officer English") of the Harrisburg Bureau of Police ("HB").  The following facts were established:  on

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and § 780-113(a)(32), respectively.

July 27, 2012, Det. Heffner was on duty in plain clothes and driving an unmarked police vehicle; more specifically a black Ford Escape. (Notes of Testimony, Trial, Apr. 10, 2013 -- Apr. 12, 2013 at 37-41).[Footnote 4] At approximately 10:30 a.m., Det. Heffner had been travelling south on Sixth Street in Harrisburg City when he saw an individual later identified as Defendant, George Green ("Appellant" or "Green"), walking with two other males in the area of [sic] H&J's bar located at Sixth and Schuykill Streets. (N.T. at 43-46). Based on his professional experience, Det. Heffner described the neighborhood as an area known for high crime and high drug activity. (N.T. at 47).

[Footnote 4] Hereinafter "N.T."

After seeing Appellant, Det. Heffner turned left onto Schuykill Street and left onto Turner Alley and proceeded through a vacant lot near where Appellant was walking towards a nearby store. (N.T. at 47). Det. Heffner stated that, without his prompting, Appellant motioned to him to back up into the lot, which he did. (N.T. at 47; 107-108). After he parked the vehicle, Appellant approached the vehicle, greeted the Detective who said "you got any good?" to which Appellant responded "yes." (N.T. at 49). Det. Heffner explained that "good" is street slang for crack cocaine. (Id.) At that point in time, Appellant entered the vehicle, sat in the front passenger seat and began a conversation about buying the illegal drugs. (N.T. 49-50). Det. Heffner told him that he had $30 to buy the drugs. Appellant then to [sic] opened the zipper on his pants and pulled out a plastic bag containing several smaller black baggies, moved the larger bag to his feet and came up with three small bags of cocaine. (N.T. at 49-52; 89; 100-101). Det. Heffner handed the $30 to Appellant which consisted of a $20 bill and a $10 bill. He had previously recorded the serial numbers in a notebook he routinely keeps when working undercover. (N.T. at 52-55).

Det. Heffner was able to easily observe Appellant during the transaction as the vehicle is not large and, due to the bucket seats in the front, Green was sitting within 1½ feet from his seat. (N.T. at 50-51). Heffner described Appellant as a light skinned black male in his 20s, wearing a white T-shirt, blue jeans, a blue baseball cap with red on it, and facial hair. (N.T. at 52). He also noted that appellant was smoking a long cigar with a yellow tip and a very pungent odor. (N.T. at 52-53). Detective Heffner was close enough to Appellant to observe a tattoo on his left forearm which he described as a "1," a "C" and an "O or 0," each with a space in between them. (N.T. at 51). He also saw a tattoo on his left neck that he described as writing down the side, but he could not see what the writing said. (N.T. at 51-52). Detective Heffner was able to positively identify the tattoos described when presented with photographic evidence of them during trial. (N.T. at 62-64).

When the transaction was completed, Appellant exited the car and Det. Heffner observed him in his rearview mirror heading south on Turner Alley. (N.T. at 53; 74). Det. Heffner then drove to Sixth and Curtain to perform a field test on the substance he had purchased and it tested presumptively positive for cocaine. (N.T. at 57-58). Subsequent laboratory testing by the Pennsylvania State Police ("PSP") confirmed that the purchase made by Det. Heffner was, indeed, crack cocaine. (N.T. at 70-72).

Since Detective Heffner was on patrol alone, he followed proper protocol by radioing Corporal Gautsch ("Cpl. Gautsch"), who he had seen while driving in the area of the crime scene. The purpose of the contact was to assemble a team to conduct a search and possibly make an arrest. (N.T. at 57-58; 60-61). Over the radio and during a cellphone conversation, he provided Cpl. Gautsch with a physical description of the suspected dealer and information on the tattoos. Heffner relayed his belief that Appellant was headed back towards Sixth

and Schuykill Streets. (N.T. at 58-60; 75-81). Cpl. Gautsch, Det. Heffner and two uniformed officers, Officer English and Officer Minnier, proceeded to the location of Sixth and Schuykill in the area of H&J's bar. Upon arrival Officer English radioed that he had seen an individual matching the suspect's description standing outside H&J's. (N.T. at 75; 81-82).

Upon entering H&J's bar, Det. Heffner spotted Appellant smoking a cigar and playing pool with a tall male dressed in all black. (N.T. at 86-87). The other individual saw police and went into the bathroom. (Id.) Det. Heffner immediately recognized Appellant as the individual who had sold him the packages of crack cocaine. He recognized the clothing, the hat, the cigar with the yellow tip and its odor, and he identified the tattoos on Appellant's neck and arm. (N.T. at 87-88). Appellant was immediately arrested, taken into custody and searched incident to arrest. (N.T. at 88-89).

Approximately 10 minutes elapsed from the time when Det. Heffner conducted the transaction with Appellant in the car and the time of the arrest. During the intervening timeframe, Appellant was out of the police's visual contact. (N.T. at 84-85). The search incident to arrest resulted in the recovery of $24, none of which was the "buy" money used by Det. Heffner, and a cellphone. (N.T. 89; 92). Additionally, a police search of the bar and bathroom as well as his cellphone failed to uncover any other evidence, including the "buy" money or more drugs. (N.T. at 92-93; 123-124).

Officer English stated that on the date of the incident he had been summoned by Cpl. Gautsch to respond to the area of Sixth and Schuykill Streets to investigate a drug transaction. (N.T. at 133). He was provided a physical description of the suspected drug dealer and arrived at that location in under one minute. (N.T. at 134-135). The description provided was that of a light-skinned black male, with

facial hair who was wearing a white shirt, blue jeans and a blue hat. (N.T. at 134). Officer English parked the right side of his K9 unit at the curb facing west on Schuykill Street with the bar on his left. (N.T. at 135-137). He was the first marked police unit on the scene and he immediately saw a person walking into the bar that matched the description Heffner had provided. (N.T. at 137-138). While he secured the perimeter, he did not see anybody leave the bar between the time of his arrival and the time Appellant was arrested. (N.T. at 138-139).

Trial court opinion, 6/6/14 at 3-6.

A jury trial was held on April 10, 2013 through April 12, 2013. Appellant was convicted of one count of unlawful delivery of a controlled substance and one count of unlawful possession of drug paraphernalia, and he was sentenced to an aggregate term of imprisonment of 24 months to 60 months. Neither post-sentence motions nor a notice of appeal were filed after sentencing. Subsequently, on November 20, 2013, appellant filed a timely **pro se** petition pursuant to the Post Conviction Relief Act ("PCRA").[2] PCRA counsel was appointed on December 12, 2013. Upon review of appellant's claims, PCRA counsel concluded that appellant had been rendered ineffective assistance of counsel as, despite appellant's request to do so, counsel failed to perfect an appeal of his judgment of sentence. On January 31, 2014, PCRA counsel filed a motion to reinstate appellate rights under the PCRA. The trial court issued an order directing the Commonwealth to respond to appellant's motion. The Commonwealth

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

timely complied and informed the court it had no objection to appellant's direct appeal rights being reinstated **nunc pro tunc**. On February 25, 2014, the trial court granted appellant's motion and provided him 30 days to file a notice of appeal.

On March 10, 2014, appellant filed a timely notice of appeal. Appellant was ordered to file a statement of errors complained of on appeal and he timely complied. The trial court filed its Rule 1925(a) opinion on June 6, 2014. Appellant presents one issue for our consideration: "Whether the evidence presented at trial was insufficient to convict Appellant of the crime of Unlawful Delivery of a Controlled Substance and Possession of Drug Paraphernalia[?]" (Appellant's brief at 7.)

In reviewing a sufficiency challenge, we apply the following well-settled principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

> Moreover, in applying the above test, the entire record must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 559-560 (Pa.Super. 2011) (*en banc*), quoting *Commonwealth v. Hutchinson*, 947 A.2d 800, 805 (Pa.Super. 2008).

Appellant argues that other than the testimony of Detective Heffner, there was no supporting evidence. (Appellant's brief at 10.) More specifically, appellant contends upon his arrest, he did not have any drugs on his person or the $30 that Detective Heffner testified he paid him. (*Id.* at 11.) Our role, as stated previously, is to view the evidence in a light most favorable to the verdict winner, drawing all reasonable inferences in its favor, to determine if the finder-of-fact could reasonably have concluded that all the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Ferino*, 640 A.2d 934, 937 (Pa.Super. 1994), *affirmed*, 655 A.2d 506 (Pa. 1995).

Here, the evidence indicated appellant was arrested approximately ten minutes after the drug transaction. Detective Heffner ("Heffner") had personal knowledge of the transaction since it was he who gave appellant $30 for three small bags of crack cocaine. According to Heffner, he witnessed appellant take a bag out of the zipper area in his pants and retrieve three smaller bags. The substance in the bags tested positive for

crack cocaine.  Additionally, Heffner was able to get a clear view of appellant as appellant sat less than 1½ feet across from him in his vehicle.  Heffner observed two tattoos, one of which he was able to decipher the characters "as a '1,' a 'C', and an 'O' or '0,' each with a space in between."  At trial, appellant displayed his right forearm and the left side of his neck for the jury to see the tattoos, which were consistent with the description that Heffner gave of the tattoos he saw on the individual who sold him the crack cocaine.

Heffner's testimony alone, which was obviously believed by the jury, was sufficient to support appellant's convictions.  *See Commonwealth v. King*, 959 A.2d 405, 411 (Pa.Super. 2008) (rejecting defendant's "assertion that the verdict was infirm because no physical evidence linked him to the crimes" since two eyewitnesses' identification testimony, which the jury was permitted to accept, was sufficient to support his conviction); *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa.Super. 1978) (stating a positive identification by one witness, a police officer, is sufficient for conviction).  Accordingly, appellant's judgment of sentence is affirmed.

The judgment of sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2015