J-S41023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS E. WEBB | : | |
| | : | |
| Appellant | : | No. 1446 EDA 2017 |

Appeal from the Judgment of Sentence April 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007980-2016

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 07, 2018**

Appellant, Nicholas E. Webb, appeals from the judgment of sentence entered on April 27, 2017.  We affirm.

The trial court ably summarized the underlying facts and procedural posture of this case.  As the trial court explained:

> The complaining witness[, B.M. (hereinafter "the Victim"),] testified that he was at [a particular address] in Philadelphia, Pennsylvania on May 16, 2016 to work on his friend Alan Bailey's car as well as his own.  [The Victim] was familiar with the house since he had previously lived there.  He was outside for approximately an hour working on the cars before going inside the house to use the bathroom.  Upon entering, [the Victim] encountered [Appellant] and exchanged words with him.  [The Victim] remained inside the house for ten [to 15] minutes and had a conversation with Mr. Bailey.  [The Victim] testified that during this conversation he told Mr. Bailey he wanted his house back, although he stated he did not direct that comment at anyone in particular.  He then exited the house and continued to work on the cars outside.

---

*   Former Justice specially assigned to the Superior Court.

Approximately an hour later, [Appellant] came from behind and struck [the Victim] in the face with closed fists and perhaps a metal object. [The Victim] was able to immediately identify [Appellant] as the perpetrator by turning around during the attack and looking at [Appellant] face-to-face. He explained that although he did not see a metal object, he believed it was [metal] from the contact he felt to his face. . . .

[Appellant] struck [the Victim] three to four times before Mr. Bailey ran out of the house and pulled [Appellant] off of [the Victim]. Mr. Bailey then called 911 and drove [the Victim] to Mercy Hospital. Approximately [20 minutes] transpired from the time the attack began to when [the Victim] was transported to the hospital.

[The Victim] testified that the police came to see him at Mercy Hospital in response to the 911 call. As a result of the attack, his eyes were black and blue, his face completely swollen, and his nose fractured in multiple places. He also suffered excessive bleeding from his face while being transported to the hospital. [The Victim] explained that he was prescribed medication for his injuries and the pain and swelling lasted for about three weeks. . . . Three weeks after the incident, [the Victim] noted that he came into contact with [Appellant] again when he came back to the house to visit Mr. Bailey without incident.

On cross-examination, [the Victim] testified that he was [Appellant's] roommate for one-and-a-half to two years at [the residence. The Victim] is 6'2" and weighs 247 pounds. During [the time the Victim and Appellant lived together, the Victim testified] that he engaged in verbal arguments with [Appellant] but never hit him. He had on two occasions physically thrown [Appellant] against a wall. On redirect examination, [the Victim] stated that he moved out of the residence a year prior to the incident. . . .

The certified medical records of [the Victim] from after the incident . . . [declared that the Victim suffered] comminuted bilateral fractures of the nasal bones, a non-displaced fracture of the left nasal process of the maxilla, and a moderately displaced impressed fracture of the right nasal process of the maxilla. Further, there was an associated

comminuted fracture of the anterior bony nasal septum, associated soft tissue swelling, fluid and blood in the nasal cavity, and comminuted bilateral fractures of the nasal bones.

[Appellant] then testified and claimed that he did not intend to strike [the Victim] intentionally[,] but attacked him because he felt threatened. [Appellant] is 5'8" and weighs 140 pounds. Appellant stated that he knew [the Victim] for about five to six years and had been bullied and intimidated by him. This consisted of being called names and being thrown up against a wall in 2012 and 2013. On the day of the incident, [Appellant] saw [the Victim] crouched down and leaning inside Mr. Bailey's car as he walked out of the house. [Appellant] initially did not want to speak to [the Victim], but changed his mind and approached the car. [Appellant] stated that he walked up to [the Victim] to tell him that he should not be bullied because he was dealing with family issues at the time.

[Appellant] testified that he tapped [the Victim] on the shoulder from behind. [Appellant] stated that [the Victim] responded by calling him an expletive word and turning around to cock his right hand as if he was going to punch him. [Appellant] testified that he immediately punched [the Victim] one time in the face in response. Mr. Bailey then ran over and stood between [the Victim] and [Appellant]. [Appellant] testified that during the incident he had on black driving gloves that did not contain any metal. . . .

. . .

[Appellant was arrested and, o]n April 27, 2016, a bench trial occurred at which [Appellant] was found guilty of simple assault.[1] On that same date, [Appellant] was sentenced to 12 months of reporting probation and to attend anger management treatment/therapy.

Trial Court Opinion, 11/15/17, at 1-4 (internal citations omitted).

_____

[1] 18 Pa.C.S.A. § 2701(a)(1).

Appellant filed a timely notice of appeal. He raises one issue to this Court:

> The trial court committed error when it found there was insufficient evidence to support [Appellant's] claim of justification (self-defense) when using non-deadly force upon the [Victim].

Appellant's Brief at 6 (some internal capitalization omitted).

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

- 4 -

On appeal, Appellant claims that the evidence was insufficient to disprove his claim of self-defense. Appellant's Brief at 8. Appellant argues:

> [Appellant] was much smaller in physical stature to [the Victim]. We also see that there was a history of physical abuse by [the Victim] against [Appellant,] which occurred during the several years in which [Appellant] and [the Victim] were housemates. On the date in question, [the Victim] once again taunted [Appellant] by proclaiming loud enough for [Appellant] to hear that "he wants his house back." [The Victim] did not own that property and clearly made such an insult[] with the intent to harass and irk [Appellant]. The trial court heard testimony from [Appellant] that he went outside to talk to [the Victim] and ask him to leave him alone. [The Victim] turned to face [Appellant] in a threatening manner. [Appellant,] fearful that [he was] about to [be] struck, hit [the Victim] in self-defense.

*Id.* at 9.

In relevant part, Section 505 of the Crimes Code provides:

> § 505. Use of force in self-protection
>
> (a) Use of force justifiable for protection of the person.--The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505.

The term "unlawful force" is defined as:

> "Unlawful force." Force, including confinement, which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort or would constitute such offense or tort except for a defense (such as the absence of intent, negligence, or mental capacity; duress; youth; or diplomatic status) not amounting to a privilege to use the force. Assent constitutes consent, within the meaning of this section,

- 5 -

> whether or not it otherwise is legally effective, except assent to the infliction of death or serious bodily injury.

18 Pa.C.S.A. § 501.[2]

"If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." **Commonwealth v. Smith**, 97 A.3d 782, 787 (Pa. Super. 2014) (internal quotations and citations omitted). Further, in a case that "involves a mere battery," "force may be met with force so long as it is only force enough to repel the attack." **Commonwealth v. Pollino**, 467 A.2d 1298, 1301 (Pa. 1983).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence is clearly sufficient to disprove Appellant's claim of self-defense. Indeed, the Victim testified at trial: "I was working on the car and [Appellant] snuck up behind me. . . . I had my back turned facing the car and he snuck up behind me and hit me . . . and broke my . . . nose in three or four different places." N.T. Trial, 4/27/17, at 12-13. The Victim testified that, after Appellant initially hit him, he turned around, saw Appellant, and Appellant "just kept hitting me. . . . He was punching me in my face . . . and hitting me

---

[2] Appellant was convicted of simple assault. In relevant part, simple assault is defined as: "a person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1).

in my nose." ***Id.*** at 14.  Further, the Victim testified that he believed Appellant was hitting him with brass knuckles or some other metal object.  ***Id.*** at 16.

The Victim's testimony is, by itself, sufficient to disprove Appellant's claim of self-defense because the Victim testified that Appellant was the sole aggressor and that the Victim never attempted to use or used force against Appellant on the day in question.  Therefore, there is sufficient evidence to establish that Appellant's use of force was criminal and not justifiable because, viewing the evidence in the light most favorable to the Commonwealth, Appellant could not have reasonably believed that force was "immediately necessary for the purpose of protecting himself against the use of unlawful force by [the Victim] on the [] occasion" in question.  18 Pa.C.S.A. § 505(a). Appellant's claim to the contrary fails.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/18