J-S27014-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES DUNLAP, JR. | : | |
| | : | |
| Appellant | : | No. 1273 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 16, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003662-2017

BEFORE:    OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OLSON, J.:                          FILED MAY 21, 2019

Appellant, James Dunlap, Jr., appeals from the judgment of sentence entered on July 16, 2018, as made final by the denial of Appellant's post-sentence motion on July 30, 2018.  We affirm.

In 2017, the Commonwealth charged Appellant with committing multiple sexual crimes against S.C. (hereinafter "the Victim").  During Appellant's jury trial, the Victim testified that, on the night of October 13, 2017, she was at home and heard a knock on her door.  N.T. Trial, 4/10/18, at 18.  She answered the door and saw Appellant standing there.  Id. at 19.  As she testified, at the time, she had known Appellant for approximately five or six years and they had previously been in a sexual relationship.  Id. at 19-20.

The Victim testified that Appellant asked whether he could enter her home, so that they could talk.  Id. at 21.  When the Victim refused, Appellant

_____
*   Retired Senior Judge assigned to the Superior Court.

"pushed his way in" and locked the Victim's door from the inside. Id. at 21 and 23. The Victim testified that she told Appellant to leave. Id. at 22. However, Appellant refused, backed the Victim into a corner, and started licking her neck. Id. She testified that she told Appellant to get off of her and tried to unlock her door. As the Victim testified:

> He runs behind me, put my arms like this and he pushes me into my room . . . [and] on my bed. . . . [H]e has me by [the] back of my neck holding me like this and I'm like James what are you doing, get the fuck off me. . . .
>
> He uses his other hand and then he inserts his penis into – at first he tried to insert it into my anus. . . . He got like half – that much in . . . [my] anus. . . . It went in about that much. I felt about the tip. . . . [And then] I lifted up on my toes, so it lifted my anus higher out the way. . . . [A]nd he shoved [his penis] in . . . [m]y vagina.

Id. at 23-24 and 29.

As the Victim testified, during this time, she was continuously telling Appellant to stop what he was doing, but Appellant refused. Id. at 24-25 and 27-29.

She testified that she was eventually able to move her body in such a way that Appellant's penis fell out of her; the Victim then grabbed her phone. Id. at 30-31. She testified that Appellant ordered her to take a shower, but she refused, told Appellant to leave, and began to operate her phone. Id. at 31. At that point, Appellant left the Victim's house and the Victim called the police. Id. at 32-33.

When the police arrived, they escorted the Victim to the hospital and the hospital performed a forensic examination on the Victim. Id. at 37. Appellant's DNA was found on samples taken from the Victim's breast and neck. N.T. Trial, 4/11/18, at 18 and 19-20.

Appellant testified in his own defense and told the jury that he and the Victim had consensual intercourse on the night in question. See id. at 48-58.

The jury found Appellant guilty of sexual assault, unlawful restraint, and indecent assault;[1] it found Appellant not guilty of rape, involuntary deviate sexual intercourse, and criminal trespass. Id. at 134. On July 16, 2018, the trial court sentenced Appellant to serve an aggregate term of 50 to 100 months in prison, followed by six years of probation, for his convictions. N.T. Sentencing, 7/16/18, at 14.

The trial court denied Appellant's post-sentence motion on July 30, 2018 and Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> Did the Commonwealth present insufficient evidence to sustain each of Appellant's convictions as (1) the testimony was so contradictory on the essential issues that the jury's findings were based on speculation and conjecture, and (2) the verdicts are entirely inconsistent?

Appellant's Brief at 7 (some capitalization omitted).

_____

[1] 18 Pa.C.S.A. § 3124.1, 2902(a)(1), and 3126(a)(2), respectively.

Appellant claims that the evidence was insufficient to sustain his convictions. We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Brown, 23 A.3d 544, 559–560 (Pa. Super. 2011) (en banc), quoting Commonwealth v. Hutchinson, 947 A.2d 800, 805–806 (Pa. Super. 2008).

First, Appellant claims, the evidence was insufficient to sustain his convictions because "the testimony was so contradictory on the essential issues that the jury's findings were based on mere conjecture and speculation." Appellant's Brief at 21; see also Commonwealth v. Brown, 52 A.3d 1139, 1156 n.18 (Pa. 2012) (holding: a claim that "the testimony

- 4 -

presented to the [fact-finder] was so unreliable and contradictory that the[] verdict could only have been arrived at through speculation and conjecture . . . [is] a challenge to the sufficiency [of the evidence]").

On appeal, Appellant argues that the following inconsistencies support his claim: a) the Victim testified that "she did not want to have sex with Appellant" on the night in question "because she already had another man coming over;" however, "this man never arrived that evening;" b) the Victim "presented conflicting testimony/statements as to whether Appellant locked her front door or her bedroom door;" c) the Victim "testified that Appellant tried to penetrate her anus with his penis, but never mentioned this to the forensic nurse;" d) the Victim testified that, "after the incident, Appellant wanted her to take a shower, turned on the water and asked to shower with her, but told the forensic nurse that Appellant tried to push her into the shower and told [Erie County Detective Matthew Gustafson] that Appellant only asked [her] to wipe up;" e) the Victim described a struggle with Appellant, but she also testified that Appellant "managed to get his pants and hooded sweatshirt off before she [] broke free;" and, f) the Victim "testified that Appellant drank from her glass of juice after raping her, but never mentioned this detail to [Detective] Gustafson." Appellant's Brief at 24-25 (citations omitted).

Appellant cites Commonwealth v. Karkaria, 625 A.2d 1167 (Pa. 1993) in support of his argument that the contradictory evidence presented at trial was insufficient to establish guilt. Karkaria, however, is distinguishable from the case at bar. In Karkaria, the Commonwealth relied

upon the testimony of the complainant to establish the defendant's guilt. However, the complainant's statements and testimony repeatedly contradicted each other from the time the investigation began through trial. Thus, our Supreme Court found that the evidence was insufficient to convict Karkaria. Id. at 1168; see also Commonwealth v. Bennett, 303 A.2d 220 (Pa. Super. 1973) (holding that the evidence was insufficient to support the defendant's convictions where the only witness who testified against the defendant continually changed his story and gave contradictory testimony as to the "essential issues" in the case).

On appeal, Appellant cites to multiple tangential issues in which, he claims, the Victim contradicted herself. Appellant's Brief at 24-25. These tangential issues do not provide Appellant with an avenue of relief, as any contradiction regarding these issues is not so significant as to render the Victim's testimony unworthy of any weight.

The only "essential issue" Appellant notes concerns his claim that the Victim "testified [] Appellant tried to penetrate her anus with his penis, but never mentioned this to the forensic nurse." See Appellant's Brief at 24. Initially, we note that this is an example of an omission – not a contradiction. Further, and at any rate, the Victim's testimony regarding Appellant's sexual assault, indecent assault, and unlawful restraint of her on the night in question was detailed, consistent, and unwavering. See N.T. Trial, 4/10/18, at 12-98. Appellant's single citation to an omission, in the Victim's statement to the forensic nurse, of Appellant's penetration of her anus does not render the

Victim's testimony regarding Appellant's actions that night "so inherently unreliable that a verdict based upon [her testimony] could amount to no more than surmise or conjecture." Karkaria, 625 A.2d at 1170 (quotations and citations omitted). Appellant's claim to the contrary fails.

Appellant also claims that the evidence was insufficient to support his convictions because the jury's verdict was inconsistent. Appellant's Brief at 25-28. As we have held:

> it is well-settled that inconsistent verdicts are permissible in this Commonwealth.
>
> . . .
>
> [I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict. The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty.

Commonwealth v. Barnes, 167 A.3d 110, 120 (Pa. Super. 2017) (en banc) (quotations and citations omitted).

Appellant acknowledges the above precedent and recognizes that we are bound by the holding of Barnes. See Appellant's Brief at 26-27. Nevertheless, Appellant declares that he is advancing his current argument to

"preserv[e] the issue for potential review in the Supreme Court of Pennsylvania." Id. at 28 n.1. We appreciate Appellant's candor. However, as Appellant is aware, we are bound by Barnes. Therefore, Appellant's claim that he is entitled to relief "due to the indisputable inconsistency of the verdict[]" necessarily fails. See Barnes, 167 A.3d at 120.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2019