J-S07020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEITH BLANCO, | |
| Appellant | No. 1253 MDA 2014 |

Appeal from the Judgment of Sentence of June 16, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005358-2013

BEFORE:  BENDER, P.J.E., OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 27, 2015**

Appellant, Keith Blanco, appeals from the judgment of sentence entered on June 16, 2014, as made final by the denial of Appellant's post-sentence motion on June 25, 2014.  On this direct appeal, Appellant's court-appointed counsel has filed both a petition to withdraw as counsel and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[1]  We conclude that Appellant's counsel has complied with the procedural requirements necessary to affect withdrawal.  Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous.  We,

---

[1] ***See also Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981).

therefore, grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

After Appellant was arrested on October 20, 2013, the Commonwealth charged Appellant with one count of possession of a controlled substance with the intent to deliver (hereinafter "PWID"), one count of possession of a controlled substance, and two counts of failure to stop at a clearly marked stop sign.[2] On June 16, 2014, Appellant proceeded to a bifurcated trial on the charges, with the jury sitting as the fact-finder on the PWID and simple possession charges, and the trial court sitting as the fact-finder on the failure to stop at a clearly marked stop sign charges.

During Appellant's trial, City of Reading Police Officer Nathan Matz testified that, in the early morning hours of October 20, 2013, he was in full uniform and was driving a marked patrol car in the city of Reading, when he witnessed Appellant drive "straight through" two stop signs. N.T. Trial, 6/16/14, at 5-6. After witnessing these Motor Vehicle Code violations, Officer Matz effectuated a traffic stop of Appellant's vehicle and, during the stop, Officer Matz had cause to place Appellant under arrest.[3] *Id.* at 6. The search of Appellant's person incident to arrest revealed that Appellant

_____

[2] 35 P.S. § 780-113(a)(30) and (16), and 75 Pa.C.S.A. § 3323(b), respectively.

[3] The affidavit of probable cause declares that Appellant was arrested because he had "two verified scofflaw warrants for harassment tickets." Affidavit of Probable Cause, 10/20/13, at 1.

- 2 -

possessed $164.00 and one large sandwich bag that contained 27 separate baggies of cocaine. *Id.* at 9-10 and 19-20. The baggies of cocaine were color-coded and were divided as follows: ten individual pink baggies, six individual black baggies, one blue baggie, and a separately bundled packet of ten black baggies. *Id.* at 9-10. The total weight of the cocaine in all of the baggies was approximately 11.1 grams. *Id.* at 14.

As Officer Matz testified, while he and City of Reading Criminal Investigator Kevin Haser were questioning Appellant:

> [Appellant] told us that he works as the head of security for Sam's Goose House, which is a local bar which was about two blocks away from where I originally spotted him on Union Street. He said he left. The bar closed [at] approximately 2:00, and he hung around and closed up the place.
>
> He said that he was going to a party later that night, and that people, friends, his cousin, his cousin's girlfriend, gave him money to purchase drugs for the party. He said to us that he put in the pot, he put $60[.00] of his own money into the collective fund and that he had collected a total of $400[.00] to go buy cocaine for their party. That was supposed to be after he was done work right at the location where I pulled him over. . . .
>
> So he told us he collected the $400[.00] and when he was done work, he left work on foot. He said he walked down the street looking for somebody to sell him cocaine. And he said there was a guy he asked, do you know of anybody that has any cocaine. The guy said I do. [Appellant] said he wanted a specific quantity. He asked for seven grams of cocaine and the guy said I don't have seven grams, but I can give you what I have.
>
> So [Appellant] handed [the man] $400[.00], according to his [statement], and he received all the 27 bags of cocaine that [were recovered]. He continued with this story and

said that he was going back to, like he said, that bar, and that he was supposed to give it to everybody there. He . . . said he was going to take the bag, lay it on the table and spread it out to everybody and everybody can grab the drugs that they wanted. So he said he was delivering it for the people that gave him the money.

*Id.* at 12-13.

During trial, the Commonwealth also presented the testimony of City of Reading Criminal Investigator Kevin Haser, whom the trial court accepted as an expert in the fields of "drug culture as well as the methods of trafficking, methods of ingestion and use in Berks County and the pricing structure and so forth." *Id.* at 31. Criminal Investigator Haser testified that – based upon his training, education, and experience, and upon the evidence of the case – all of the cocaine in this case was possessed with the intent to deliver. *Id.* at 32. As Criminal Investigator Haser testified:

There [are] several different factors that led . . . to my opinion of possession with intent to deliver. First thing that I will cover here is the sandwich bag. . . . [It] contained all of the 27 bags that [Appellant] possessed on his person.

The reason that this is significant is that all your drugs are in one place on your body. You don't have five bags in one pocket, seven bags in another and so on and so forth spread throughout differen[t] pockets. It is all contained in one area so it's easier to distribute. You can reach into one pocket, pull out this bag, a person asked you how many bags they want, two, four, you can reach into one bag and pull out those items.

The next thing that was a factor here is the different color bags. All right. We have 16 black bags, [ten] pink[,] and one blue. That is significant in itself because we have different weights in each of these bags. So we have different weights and we have different prices for different

weights. So each one of these colored bags costs a different amount.

So if someone says, hey, can I have a $20[.00] bag or [a] $10[.00] bag, he's going to be able to reach in this container and pull out a pink, blue[,] or black bag and that is going to be the bag that they are asking for the dollar amount.

. . .

[A]ltogether combined, all these drugs here, street value-wise costs anywhere from $920[.00] to [$1,020.00,] depending if these bags sold for $50[.00] or $60[.00]. So that being said, you have $1,000[.00] approximately worth of drugs here. If a drug dealer was going to buy this amount of drugs in bulk amount, like I said, we have 11 grams bulk amount of drugs here, typically in the City of Reading a gram of cocaine to buy in bulk costs anywhere from $40[.00] to $45[.00]. So . . . going off of $45[.00] a gram at 11 grams, [you have] almost $500[.00] worth of drugs [if purchased in bulk].

Drug dealing is a business. These people sell drugs to make money. You make an initial investment of $500[.00], like I said, your return for all these drugs for street sales you're looking at [$1,000.00]. You're doubling your initial investment and it's a job.

. . .

[Further,] 11 grams is quite a bit of [cocaine]. As you heard Officer Matz say, . . . [Appellant said] he has a bad cocaine habit. Through my interviews and speaking with users and drug dealers, to use between one to two grams a day is quite a bit. Two grams a bit [sic]. You're a heavy user. You will be high most of the day. You wouldn't be able to function, you know, have a job or function at your job.

*Id.* at 33-37.

Criminal Investigator Haser also testified that he did not believe Appellant was truthful when he told the officers that he purchased the cocaine that night, from a street-dealer, for $400.00. Criminal Investigator Haser testified:

> Now, I'd like to remind you again that street value-wise of all these drugs we're looking at over $1,000[.00]. And, again, drug dealing is a business. A drug dealer is not going to give away his product for what he buys it for. He's not going to make money on this. He's not going to sell $400[.00] worth of drugs that he bought for $400[.00].

*Id.* at 39-40.

Finally, Criminal Investigator Haser testified consistently with Officer Matz, and stated that, during questioning, Appellant had admitted to possessing the cocaine with the intent to distribute. Criminal Investigator Haser testified:

> [During questioning, Appellant stated that h]e bought these drugs for $400[.00] and his intention was to – after going to a private club to go to another house party where all his friends that gave him money to purchase these drugs, his intent was to place it on the table and that everybody was going to dip into it and use what they wanted to use.

*Id.* at 40.

Following Criminal Investigator Haser's testimony, the Commonwealth rested its case. Appellant then testified in his own defense. During Appellant's testimony, Appellant: testified that, on the night of his arrest, he purchased all of the cocaine off of a street-dealer for $400.00; testified that, at the time of his arrest, he "used cocaine pretty much every day" and would

- 6 -

ingest "two to three grams" of cocaine on a weekend night; testified that, at the time of his arrest, he could "probably ingest anywhere from 14 to 16 grams of cocaine" in a night; testified that, with respect to the cocaine found on his person that night, he had purchased all of the cocaine with his own money and he had possessed the cocaine for purely personal use; and, denied that, on the night of his arrest, he told the police that he purchased and possessed the cocaine with the intent of sharing it with his friends at a party. *Id.* at 49-54.

At the conclusion of Appellant's trial, the jury found Appellant guilty of PWID and simple possession and the trial court found Appellant not guilty of the two counts of failure to stop at a clearly marked stop sign. The trial court then sentenced Appellant to serve a term of 27 months to ten years in prison for the PWID conviction – which is a sentence that falls within the aggravated range of the sentencing guidelines.

As the trial court explained, one of the reasons it chose to sentence Appellant in the aggravated range of the sentencing guidelines was because Appellant had been untruthful in his testimony before the court. The trial court explained:

> All right. Well, I have reviewed the [pre-sentence investigation report (hereinafter "PSI")] in this matter. . . . I have, as the trial judge, taken into account obviously all of the testimony that I've heard. I've taken into account the information that's been provided at this proceeding, at the sentencing proceeding. I have taken into account the findings of the jury, which was paramount here. The jury's findings are that [Appellant] had a very, very significant

quantity of drugs and that he possessed those drugs for distribution, delivery.

And, unfortunately, I'm troubled significantly by the fact that [Appellant] took the witness stand in his own behalf, which he's certainly entitled to do, and we don't hold that against him, but the testimony that he gave has been completely rejected by the jury and the jury determined, obviously, that [Appellant] was mendacious in this court, and that is something that I can and will take into account in determining what the appropriate sentence here ought to be.

It is one thing to exercise the rights that you have, but it's another entirely to testify in such a fashion that is false. And this is a problem that we have sometimes in cases and sometimes we do not. Obviously, if the jurors had believed [Appellant's] testimony, [Appellant] would have been acquitted as to [the PWID count]. The jury concluded that [Appellant] was testifying untruthfully with respect to that.

. . . [Appellant] received what appears to be a county sentence for his previous delivery charge, which according to the PSI, was in 1996, and on the other matters in which he's been incarcerated they were always county sentences. . . . Obviously, the county jail did not meet [Appellant's] rehabilitative needs.

N.T. Sentencing, 6/16/14, at 68-69 (some internal capitalization omitted).

On June 24, 2014, Appellant filed a timey post-sentence motion, where he claimed that the evidence was insufficient to support his PWID conviction and that the trial court abused its discretion at sentencing. The latter claim was, however, mere boilerplate. Indeed, Appellant simply claimed: "that imposing such a harsh sentence [was] manifestly excessive based upon the facts elicited at trial and [Appellant's] prior record." Appellant's Post-Sentence Motion, 6/24/14, at 2.

The trial court denied Appellant's post-sentence motion on June 25, 2014 and Appellant filed a timely notice of appeal. On appeal, Appellant's court-appointed counsel filed a petition for leave to withdraw accompanied by an **Anders** brief. Within the **Anders** brief, Appellant raises the following claims:[4]

> [1.] Whether the evidence was insufficient to support the guilty verdict on the charge of [PWID] where the Commonwealth failed to establish beyond a reasonable doubt that [Appellant] possessed cocaine with the intent to deliver the drugs because [Appellant] testified that the cocaine was for his personal use due to his "bad cocaine habit?"
>
> [2.] Whether [Appellant's] sentence of 27 months to [ten] years in a state correctional institution was manifestly excessive, clearly unreasonable, and contrary to the fundamental norms underlying the Sentencing Code, where the court imposed a sentence in the aggravated guideline range without stating sufficient reasons on the record for the upward deviation because the court improperly relied upon [Appellant's] alleged mendacity?

Appellant's Brief at 5.

Before reviewing the merits of this appeal, this Court must first determine whether counsel fulfilled the necessary procedural requirements

---

[4] The trial court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). In accordance with Pa.R.A.P. 1925(c)(4), Appellant's court-appointed counsel filed a "statement of intent to file an **Anders**/**McClendon** brief in lieu of filing a [Pa.R.A.P. 1925(b) s]tatement." Pa.R.A.P. 1925(c)(4).

for withdrawing as counsel. ***Commonwealth v. Miller***, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under ***Anders***, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." ***Miller***, 715 A.2d at 1207. Second, counsel must file an ***Anders*** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Finally, counsel must furnish a copy of the ***Anders*** brief to his client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." ***Commonwealth v. Woods***, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5, *quoting*

***McClendon***, 434 A.2d at 1187. It is only when both the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel met all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the issues raised in the ***Anders*** brief.

Appellant first claims that the evidence was insufficient to support his conviction for PWID. The claim is frivolous.

We review Appellant's sufficiency of the evidence claim under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 11 -

***Commonwealth v. Brown***, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* ***Commonwealth v. Hutchinson***, 947 A.2d 800, 805-806 (Pa. Super. 2008).

Appellant claims that the evidence was insufficient to support his PWID conviction. Essentially, Appellant claims that the jury should have credited his trial testimony – where Appellant testified that he purchased the cocaine with his own money and for his own, personal use – and that the jury should have disregarded the evidence which tended to demonstrate that Appellant possessed the cocaine with the intent to distribute. The claim is frivolous.

To establish the offense of possession with intent to deliver a controlled substance, the Commonwealth must prove beyond a reasonable doubt that the defendant both possessed a controlled substance and had the intent to deliver it. ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1280 (Pa. 2004). In determining whether the defendant had the intent to deliver a controlled substance, courts may consider several relevant factors, including "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash." ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237-1238 (Pa. 2007). Expert opinion testimony may also be admitted to establish "whether the facts surrounding the possession of controlled substances are consistent with [the] intent to deliver rather than with [the] intent to possess [them] for personal use."

*Id.* "The expert testimony of a witness qualified in the field of drug distribution, coupled with the presence of drug paraphernalia, is sufficient to establish intent to deliver." *Commonwealth v. Carpenter*, 955 A.2d 411, 414 (Pa. Super. 2008).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence is clearly sufficient to support Appellant's PWID conviction. Indeed, the evidence supporting Appellant's PWID conviction includes: Appellant was found with over 11.1 grams of cocaine on his person (which, as Criminal Investigator Haser testified, constitutes a significant quantity of cocaine); the street-value of the seized cocaine was over $1,000.00 (which is a significant amount of product to carry); the cocaine was separated into individual, color-coded baggies (which, as Criminal Investigator Haser testified, is a hallmark of a drug dealer and which allowed for distribution of the cocaine in a quicker, easier, and more precise manner); both Officer Matz and Criminal Investigator Haser testified that, during questioning, Appellant admitted to possessing the cocaine with the intent to distribute; and, Criminal Investigator Haser testified that, in his expert opinion, Appellant possessed the cocaine with the intent to distribute.

Despite the substantial and compelling quantum of physical evidence and expert testimony adduced by the Commonwealth to establish that Appellant intended to distribute the drugs seized from his person, Appellant nevertheless asserts that the evidence introduced at his trial was insufficient

to support a conviction for PWID because he testified that he had a "bad cocaine habit" and possessed the cocaine for personal use. In this context, Appellant challenges the weight and credibility given by the jury to the evidence and testimony presented. However, we may not re-weigh the evidence or substitute our own judgment for that of the fact-finder, as that would impermissibly deprive the verdict winner, in this case the Commonwealth, of "the full effect of its having prevailed upon an issue in the trial court." ***Ratsamy***, 934 A.2d at 1237.

In this case, Appellant presented testimony regarding his personal use of the seized drugs to the jury and the jury was free to accept all, part, or none of that evidence in passing upon the credibility of the witnesses and determining the weight of the proof offered at trial. ***See id***. By its verdict, the jury clearly credited the Commonwealth's evidence and rejected, at least in part, the testimony introduced by Appellant. Such was its province.

Under ***Ratsamy***, because there was sufficient, credible evidence to support the verdict, we may not disturb the jury's findings. Appellant's sufficiency of the evidence claim is thus frivolous.

For Appellant's second and final claim on appeal, Appellant contends that the trial court abused its discretion when it sentenced Appellant in the aggravated range of the sentencing guidelines. Specifically, Appellant claims that the trial court "improperly relied upon [Appellant's] alleged mendacity

when imposing an aggravated range sentence." Appellant's Brief at 27. This claim is waived.

Appellant's challenge is to the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, while Appellant filed a timely notice of appeal and post-sentence motion, Appellant failed to specifically raise his discretionary aspects of sentencing claim in his post-sentence motion. Indeed, Appellant's post-sentence motion raised the following, boilerplate, claim: "that imposing such a harsh sentence [was] manifestly excessive based upon the facts

elicited at trial and [Appellant's] prior record." Appellant's Post-Sentence Motion, 6/24/14, at 2.

Appellant's boilerplate claim did not suggest to the trial court that Appellant was claiming error based upon the trial court (allegedly) "improperly rel[ying] upon [Appellant's] alleged mendacity when imposing an aggravated range sentence." Appellant's Brief at 27. As such, Appellant "did not give the sentencing judge an opportunity to reconsider or modify [Appellant's] sentence on this basis." *Commonwealth v. Reeves*, 778 A.2d 691, 692-693 (Pa. Super. 2001). Appellant's discretionary aspect of sentencing claim is thus waived on appeal. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

We have independently considered the issues raised within Appellant's brief and have determined that they are either frivolous or waived. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw appearance.

Petition to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2015