J-S38023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JULIO JAVIER MALAVE ECHEVARRIA, | |
| Appellant | No. 3466 EDA 2015 |

Appeal from the Judgment of Sentence of October 16, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002843-2014

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 14, 2016**

Appellant, Julio Javier Malave Echevarria, appeals from the judgment of sentence entered on October 16, 2015.  We affirm.

The able trial court has provided us with a thorough summary of the evidence presented during Appellant's jury trial.  As the trial court explained:

> The evidence at trial established the following facts.  [L.A. and N.A.] reside at [a certain address] in Nazareth, Pennsylvania.  [L.A. and N.A.] reside in a two-story home, with four bedrooms and two garages, one garage being attached to the main home and the other being a separate structure.  There is a door leading from outside into the attached garage and another door leading from inside that garage to the inside of the home.  The door leading from the garage to the interior of the home requires a key for entrance and is kept locked by [L.A. and N.A.]  [L.A. and N.A.'s] master bedroom is on the second floor of the home.
>
> On the night of March 19, 2013, [L.A. and N.A.] went to bed at approximately 10:00 p.m.  At approximately midnight, [L.A. and N.A.] were awakened by the noise of someone

coming up the stairs. A few seconds later, [L.A.] heard a gunshot outside the bedroom door. Immediately after that, [L.A. and N.A.'s] bedroom door was kicked in, and three individuals rushed in and jumped onto the bed. One of the individuals fired a shot inside the bedroom, causing [L.A.] to observe a muzzle flash. The intruders, using only flashlights for light, held [L.A. and N.A.] down on the bed, ordered them not to move, and demanded to know where the "safe," "money," and "gold chain" were. Because of the darkness, [L.A. and N.A.] could not identify any of the intruders. [N.A.], who is a native Spanish speaker, was able to communicate with the intruders, who were also communicating in Spanish.

At some point, [L.A.] was ordered to sit on the floor of the bedroom, and the intruders began taking items from the bedroom and from downstairs and putting them into a bag. Throughout the encounter, [L.A.] observed one of the intruders wearing a gun on his belt. After a total of approximately four minutes, the intruders ran down the stairs and out of the house. When he did not hear anyone remaining in the house, [L.A.] looked out of the bedroom window and observed a dark-gray, four-door vehicle driving away from the premises. [L.A.] then called the police and began investigating what had been stolen.

[L.A.] first noticed that [L.A. and N.A.'s] Toyota 4Runner [vehicle] was missing from the attached garage. At the time, [L.A. and N.A.] owned four cars, including the 4Runner, which had been parked in the attached garage on the night in question. The keys to the 4Runner were kept in a cup in the kitchen. The intruders drove away in the 4Runner, but it was later recovered by the police and returned to [L.A. and N.A.] In total, the intruders took personal property valued at approximately $47,657.00 from the home, including laptops, cell phones, a camera, the 4Runner, televisions, clothing, and gold jewelry.

Detective Randy Knauss, of the Bushkill Township Police Department, arrived at the scene sometime after midnight. Detective Knauss observed the deadbolt to the front door of the home to be locked, indicating that there had been no forced entry through that door. Detective Knauss also observed that [L.A. and N.A.'s] bedroom door was caved-in

and heavily damaged. [N.A.'s] son, [O.S.], informed Detective Knauss that he believed Noel Serrano Pizarro ("Co-Conspirator Pizarro") and Luis Daniel Gonzalez Trujillo ("Co-Conspirator Trujillo") were involved in the home-invasion robbery. Co-Conspirator Trujillo's involvement in the incident was confirmed a few days later, when [N.A.] found an identification badge bearing his name and photo in her home. Thereafter, Detective Knauss arrested and charged Co-Conspirator Trujillo.

Several months later, Co-Conspirator Trujillo entered a guilty plea with an agreement that he would cooperate with and testify on behalf of the Commonwealth in its prosecution of the other participants in the home-invasion. As a result of an interview he conducted with Co-Conspirator Trujillo, Detective Knauss turned his investigation toward [Appellant] and [Appellant's] brother, Jouseph Echevarria. After arresting and charging [Appellant], Detective Knauss interviewed him on July 3, 2014.

During the interview, [Appellant] was given **Miranda**[1] warnings and then proceeded to give written and verbal statements to police. [Appellant] told Detective Knauss that his brother told him that they, along with Co-Conspirator Pizarro and Co-Conspirator Trujillo, were going to [L.A. and N.A.'s] home to buy marijuana. [Appellant] stated that he drove to the home, receiving directions from Co-Conspirator Pizarro and, upon arriving, entered the attached garage with his brother, Co-Conspirator Pizarro, and Co-Conspirator Trujillo. Once inside the garage, [Appellant] admitted that he used a box cutter to open the door leading to the home. [Appellant] told Detective Knauss that he questioned his brother about what was happening, telling his brother that he thought the group was just going there to buy marijuana, and then returned to his car. [Appellant] stated that when the home-invasion concluded, he drove his brother and Co-Conspirator Trujillo away from the scene, with Co-Conspirator Pizarro following behind them in the stolen 4Runner. [Appellant] further stated that when his

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

brother attempted to give him a portion of the money that was the fruit of the home-invasion, [Appellant] declined it and punched his brother in the face. In his written statement, [Appellant] claimed that he had nothing to do with the robbery but, rather, stated that he merely opened the garage door, returned to his car, and waited for the others to return to the car.

At trial, Co-Conspirator Trujillo testified that prior to March 19, 2013, he was contacted by Co-Conspirator Pizarro, a friend of eight years, who told him that "there was a job going on." According to Co-Conspirator Trujillo, [Appellant] drove to and picked him up at his house. At that time, [Appellant's] brother and Co-Conspirator Pizarro were also in the car. Once Co-Conspirator Trujillo was in the car, Co-Conspirator Pizarro began giving [Appellant] directions to drive to [L.A. and N.A.'s] residence. During the drive, Co-Conspirator Pizarro told the group that they were going to do a "home invasion robbery . . . [with] people in the house." Contrary to [Appellant's] statement to Detective Knauss, Co-Conspirator Trujillo testified that there was no discussion among the group about marijuana.

When the group arrived at the residence, [Appellant] parked in front of [L.A. and N.A.'s] neighbor's house. The group then approached [L.A. and N.A.'s] garage by crossing the neighbor's yard. To gain access to the attached garage, Co-Conspirator Pizarro used a key that had been provided to him previously. [Appellant] then used a box cutter to unlock the door leading into the home. Co-Conspirator Trujillo testified that once inside the home, he knew that the group would proceed upstairs because they were informed, during the drive to the home, that there would be people in the upstairs bedroom. According to Co-Conspirator Trujillo, [Appellant] wore a mask and gloves, used a flashlight to make his way around the home, and fully participated in the home-invasion, with the exception of entering the master bedroom. Instead, [Appellant's] role was to remove items from the other upstairs bedrooms and carry them, along with items stolen from the master bedroom, down the stairs and into [L.A. and N.A.'s] 4Runner. Items were also loaded into [Appellant's] car. Once all of the items were loaded, [Appellant] drove himself, his brother, and Co-Conspirator

- 4 -

Trujillo to Co-Conspirator Pizarro's home in Allentown, while Co-Conspirator Pizarro followed in the 4Runner.

Co-Conspirator Trujillo pleaded guilty to possession of a firearm, and he admitted to that possession during his guilty plea. Despite that admission, Co-Conspirator Trujillo testified that he did not have a gun on the night in question and was unsure if Co-Conspirator Pizarro had one.

[Appellant] took the stand in this case and testified that his brother came to his house and told him he found a new place to buy marijuana, [L.A. and N.A.'s] house. On the drive to [L.A. and N.A.'s] home, the group was smoking marijuana and listening to loud music; thus, according to [Appellant], he could not hear any conversations occurring. Upon arriving at [L.A. and N.A.'s] residence, [Appellant] told the others, who had exited the car, to hurry, as [Appellant] planned on returning home to his girlfriend and children. [Appellant] testified that the others approached the home without flashlights and that he waited in the car for approximately [15] minutes. According to [Appellant], when the group failed to reemerge within [15] minutes, [Appellant] drove away, allegedly leaving them without transportation home. [Appellant] denied his statement to police that he used a box cutter to open [L.A. and N.A.'s] door from the garage into the home.

Trial Court Opinion, 8/3/15, at 2-9 (internal citations omitted).

The jury found Appellant guilty of burglary, criminal trespass, theft by unlawful taking, two counts of recklessly endangering another person, and multiple counts of criminal conspiracy.[2, 3]

---

[2] 18 Pa.C.S.A. §§ 3502(a)(1), 3503(a)(1)(ii), 3921(a), 2705, and 903(a), respectively.

[3] Specifically, the jury found Appellant guilty of criminal conspiracy to commit robbery of the first, second, and third degrees, criminal conspiracy to commit burglary, criminal conspiracy to commit criminal trespass, and criminal conspiracy to commit theft by unlawful taking.

Appellant was originally sentenced on April 6, 2015. However, after sentencing, Appellant filed a timely post-sentence motion and raised two claims: 1) the evidence was insufficient to support his convictions, and 2) some of his convictions should have merged for sentencing purposes. Appellant's Post-Sentence Motion, 4/16/15, at 1-2. The trial court agreed with Appellant in part. Specifically, the trial court entered a judgment of acquittal on all criminal conspiracy counts except for Appellant's "criminal conspiracy to commit robbery as a felony of the first degree" conviction, vacated Appellant's sentence, and ordered that resentencing would occur at a later date. Trial Court Order, 8/3/15, at 1. On October 16, 2015, the trial court re-sentenced Appellant to serve an aggregate term of 62 to 180 months in prison.

Appellant did not file a post-sentence motion following re-sentencing. However, Appellant filed a timely notice of appeal to this Court. Appellant now raises two claims on appeal:

> [1.] Was the evidence insufficient to support the conviction because the Commonwealth failed to prove that Appellant entered into a corrupt federation with the intent to commit a robbery?
>
> [2.] Was the verdict of guilty as to the charges of burglary, criminal trespass, theft, recklessly endangering another person[,] and conspiracy to commit robbery against the weight of the evidence?

Appellant's Brief at 4 (some internal capitalization omitted).

- 6 -

Appellant first claims that the evidence was insufficient to support his conviction for criminal conspiracy to commit robbery of the first degree. This claim fails.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

Appellant was convicted of criminal conspiracy to commit robbery, as defined by 18 Pa.C.S.A. § 3701(a)(1)(ii). Section 3701(a)(1)(ii) robbery is defined as follows:

A person is guilty of robbery if, in the course of committing a theft, he: . . . (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury.

18 Pa.C.S.A. § 3701(a)(1)(ii).

Further, the Crimes Code defines criminal conspiracy in the following manner:

**(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

On appeal, Appellant claims that the Commonwealth failed to prove "that [Appellant] had the criminal intent to promote or facilitate the robbery [or] that [Appellant] entered into an agreement to commit the robbery." Appellant's Brief at 12. According to Appellant, the evidence merely demonstrated that he entered into an agreement to commit a burglary. *Id.* at 14.

Appellant's claim is meritless. Certainly, as the trial court explained, the evidence was sufficient to prove that Appellant entered into an

agreement to commit the robbery and that Appellant had the criminal intent to promote and facilitate the robbery. As the trial court explained:

> Co-Conspirator Trujillo testified that [Appellant] was in the car, as the driver no less, when Co-Conspirator Pizarro stated that the group was going to perform a home-invasion robbery of a house with people inside. [Appellant], upon hearing this, continued to drive to [L.A. and N.A.'s] residence. When they arrived there, the conspirators, including [Appellant], donned masks and gloves, approached the home using flashlights, and entered [L.A. and N.A.'s] garage. When the group was unable to enter the home through the locked entrance door inside the garage, [Appellant] despite the fact that his co-conspirators were armed and despite knowing that [L.A. and N.A.] were inside, used a box cutter to open the door. Before the actual robbery took place, the invaders fired two shots. Viewing all of the above in the light most favorable to the Commonwealth, there is more than sufficient direct and circumstantial evidence that [Appellant] agreed that the group would conduct a home-invasion robbery at gunpoint, thereby either threatening the victims with or placing the victims in fear of immediate serious bodily injury. Thus, the evidence was certainly sufficient for the jury to convict [Appellant] of conspiracy to commit robbery as a felony of the first degree.

Trial Court Opinion, 8/3/15, at 16-17.

We agree with the trial court's cogent analysis and conclude that Appellant's sufficiency of the evidence claim thus fails.

For Appellant's second and final claim on appeal, Appellant contends that his convictions were against the weight of the evidence. This claim is waived.

As our Supreme Court explained:

> in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's

- 9 -

exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009) (internal quotations and citations omitted).

A weight of the evidence challenge must first be raised with the trial court either before sentencing or in a post-sentence motion. Pa.R.Crim.P. 607(A). Here, Appellant failed to raise his weight claim before the trial court. Thus, the claim is waived. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/14/2016

- 10 -