J-S48024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFERY SPENCER | : | |
| | : | |
| Appellant | : | No. 138 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 15, 2019
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0003158-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFERY SPENCER | : | |
| | : | |
| Appellant | : | No. 149 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 15, 2019
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002136-2019

BEFORE: KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.: Filed: March 11, 2021

Appellant, Jeffery Spencer, appeals from the judgments of sentence entered in the Northampton County Court of Common Pleas, following his jury trial convictions for three counts of intimidation of a witness/victim and one count each of aggravated assault of an unborn child, simple assault, resisting arrest, disorderly conduct, terroristic threats, criminal solicitation to commit

perjury, and obstructing the administration of the law, and bench trial

conviction for the summary offense of harassment.[1]  We affirm.

The trial court set forth the relevant facts of this case as follows:

> On August 2, 2018, [Victim's] child called the City of Bethlehem Police for assistance in handling a domestic disturbance between Victim and her then-boyfriend, [Appellant] at 6:55 AM.  Appellant also called the Police for assistance at 6:56 AM.  The incident took place at the couple's second floor apartment, located at 720 East 4th Street, Bethlehem, Northampton County, Pennsylvania, 18015.
>
> …Victim stated that the couple had a verbal altercation, which escalated into…Appellant punching her in the forehead and attempting to punch her stomach.  As a result of…Appellant punching…Victim, she suffered from a "knot" on her head for two days following the incident.  At the time of the attempted assault, …Victim was nine months pregnant and…Appellant was the father.  …Victim stated that after…Appellant hit her head, he then "swung at my stomach and said, I'm going to make you bleed that baby out your ass."  …Victim testified that…Appellant swung "hard" at her stomach with a closed fist.  …Victim claimed to have avoided the punch by falling backwards onto a bed.  …Victim stated that…Appellant's punch missed her body, and hit the bedroom wall instead.  …Victim testified that she then called out to her child to call 911, and then…Appellant called 911 immediately after.
>
> *       *       *
>
> Upon police arrival, Appellant was standing on the rear deck of the second floor apartment.  Appellant told the Police that…Victim scratched him on the face and chest, yet Bethlehem City Police Officer Daniel Kennedy…and Officer Andrew DeFrank…testified that they did not observe any marks or injuries on…Appellant.  Officer DeFrank observed

_____

[1] 18 Pa.C.S.A. §§ 4952(a)(2), (3), (5); 2606(a); 2701(a)(1); 5104; 5503(a)(2); 2706(a)(1); 902(a); 5101; and 2709(a)(1), respectively.

the "knot" on…Victim's head, stated that she was "visibly upset," and saw a hole in the wall that…Appellant allegedly created. Officer Kennedy also observed the "knot" on…Victim's head and mark on the wall. During the [o]fficers' questioning of…Victim, …Appellant walked into the residence from the rear deck. The officers informed Appellant that he had to wait outside because they needed to keep the parties separated. Officer DeFrank stated that based on the observations and statements by the parties, there was probable cause to arrest…Appellant.

The Police placed…Appellant in custody in the kitchen of the residence, they walked several feet, and then when…Appellant was outside on the rear deck he "went limp, said he couldn't walk, and dropped to his knees." Officer Kennedy testified that…Appellant stated "you want games, I know all the games, get me an ambulance—and then collapsed on the deck." …Appellant claimed to have a preexisting disease, which made him unable to walk and requested EMS assistance. The Police called for EMS and as they waited, …Appellant began yelling disparaging and profane slurs so loudly at the [o]fficers that it caused neighbors to leave their houses to see what was happening.

Andrew Brown…and Shannon Pressley…, City of Bethlehem EMS Paramedics, responded to the incident. Pressley testified that when EMS arrived, …Appellant was sitting on his couch outside on the porch. Pressley observed [Appellant] was "very agitated, hostile. He was yelling, irate." Brown also described…Appellant as "very agitated" and heard…Appellant yelling very loudly, "[d]on't fucking touch me, stay away from me." Pressley stated that…Appellant was "[y]elling profanities. Don't f'ing touch me, nobody come near me. He was yelling at the police. He was screaming. He didn't want my partner or myself to come near him." EMS tried to assist…Appellant, but he resisted. Pressley explained to…Appellant that the safest option was for him to walk down the stairs on his own, however, he refused. …Appellant said that he would be able and willing [to] walk down the stairs if he was given his cell phone.

When EMS and [o]fficers tried to place…Appellant in a "stair chair" to carry him down the stairs, …Appellant made

- 3 -

himself "rigid" by locking his knees and back to prevent them from placing him in the chair. Appellant was "yelling, screaming and actively resisting officers." EMS tried to carry [Appellant] down the stairs, but…Appellant was "attempting to stick his feet in between the spindles of the railing. He was leaning forward attempting to tip the chair." EMS sedated…Appellant with an "intramuscular injection of ketamine," which is a general anesthetic, and strapped him into a backboard, carried him downstairs, and transported him to Saint Luke's Fountain Hill Hospital.

(Trial Court Opinion, filed February 10, 2020, at 1-5) (internal citations omitted). Based on these events, the Commonwealth charged Appellant at Docket No. 3158-2018 with one count each of aggravated assault of an unborn child, simple assault, resisting arrest, terroristic threats, disorderly conduct, false identification to law enforcement authorities, possession of a small amount of marijuana for personal use, and harassment.[2]

Between August 25, 2018 and March 10, 2019, while incarcerated at Northampton County Prison prior to trial, Appellant called and wrote to Victim several times. In his calls and letters, Appellant told Victim not to answer the door if someone tried to serve her with a subpoena, and initially told Victim not to attend any trial proceedings. Appellant later instructed Victim on how to act and speak at the preliminary hearing and trial, and told Victim to testify that the police threatened she would lose custody of her children unless she testified a certain way. Appellant also called and wrote to third parties, asking

---

[2] The Commonwealth later withdrew the false identification and possession of marijuana charges.

them to influence Victim on how to testify as well. Based on Appellant's conduct while incarcerated, the Commonwealth charged Appellant at Docket No. 2136-2019 with three counts of intimidation of a witness/victim, one count of criminal solicitation to commit perjury, and one count of obstructing the administration of the law.

On July 11, 2019, the Commonwealth filed a motion for joinder of the two dockets for trial. On July 25, 2019, the Commonwealth also filed a motion *in limine* at both docket numbers, seeking to admit: (1) "evidence of prior domestic abuse involving [Appellant] and…Victim;" and (2) the "prison phone calls and letters wherein [Appellant] attempts to intimidate and interfere with the testimony of…Victim." (Commonwealth's Motion *in Limine*, filed 7/25/19, at 4). The court granted both motions on August 29, 2019.

Appellant's trial began on September 3, 2019, and on September 5, 2019, the jury found Appellant guilty of all charges. The court also found Appellant guilty of the summary offense of harassment. The court sentenced Appellant on November 15, 2019, to an aggregate term across both dockets of 14½ to 30 years' incarceration. Appellant filed timely notices of appeal at each docket on December 13, 2019.[3] On January 23, 2020, this court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant complied on January 31, 2020.

---

[3] This Court subsequently consolidated the appeals.

Appellant raises four issues on appeal:

Whether the trial court erred in granting the Commonwealth's motion for joinder of cases CR-3158-2018 and CR-2136-2019[?]

Whether the trial court erred in allowing [Appellant]'s prior abuse/bad acts of same victim to be admissible in the Commonwealth's Case-in-Chief[?]

Whether the trial court erred in denying [Appellant]'s motion for judgment of acquittal as to the one (1) count of Aggravated Assault of an Unborn Child, as the Commonwealth failed to establish all of the elements of said offense[?]

Whether the verdict is not supported by the weight of the evidence that was presented by the Commonwealth and was inconclusive that as a matter of law no probability of fact relating to the crime(s) could be drawn[?]

(Appellant's Brief at 2-3).

In his first issue, Appellant argues the trial court erred in granting the Commonwealth's motion to join for trial the charges at Docket No. 3158-2018 (assault-related charges) and Docket No. 2136-2019 (witness intimidation-related charges). Initially, Appellant alleges the letters and phone calls relating to Appellant's crimes at Docket No. 2136-2019 do not demonstrate Appellant's intent, absence of mistake or accident, or consciousness of guilt concerning Docket No. 3158-2018. Appellant avers he did not claim the incident was an accident or mistake, but rather that Victim falsified her statements to the police. Additionally, while Appellant admits his statements could be interpreted as an attempt to persuade Victim not to testify or to influence her testimony, Appellant contends "[those statements] have no

- 6 -

bearing on what he intended to do on the day he was arrested at information CR-3158-2018." (*Id.* at 10). Appellant further maintains that he did not admit his guilt for the assault-related crimes in the phone calls or letters. Rather, Appellant suggests the letters and phone calls merely show his concern for the potentially lengthy prison sentence he faced if found guilty.

As well, Appellant insists the jury was incapable of separating the evidence at the two dockets. Appellant avers the joinder of all charges required the jury to sort through numerous phone calls and letters that "can be construed as unrelated" to the initial case at Docket No. 3158-2018. (*Id.* at 12). Appellant also asserts the testimony from multiple police witnesses about different events on different dates created confusion and made it difficult for the jury to separate the evidence for each crime. Appellant maintains he suffered prejudice as a result of the joinder, which "served only to bolster the credibility of each complainant and to prejudice [Appellant], by permitting the jury to convict based on the number of calls and letters [Appellant] made and sent [Victim] regarding the case instead of allowing the jury to evaluate the Aggravated Assault of an Unborn Child on its merits and the credibility of each complainant, specifically [Victim] alone." (*Id.* at 14). Appellant concludes the trial court erred by joining the two dockets for trial, and this Court should remand for new, separate trials. We disagree.

Whether "separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only

for a manifest abuse of discretion or prejudice and clear injustice to the defendant." ***Commonwealth v. Cousar***, 593 Pa. 204, 225, 928 A.2d 1025, 1037 (2007), *cert. denied*, 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008) (quoting ***Commonwealth v. Robinson***, 581 Pa. 154, 190, 864 A.2d 460, 481 (2004), *cert. denied*, 546 U.S. 983, 126 S.Ct. 559, 163 L.Ed.2d 470 (2005)).  The Pennsylvania Rules of Criminal Procedure govern the joinder and severance of offenses as follows:

### Rule 582.  Joinder—Trial of Separate Indictments or Informations

(A)    Standards

(1)    Offenses charged in separate indictments or informations may be tried together if:

(a)    the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b)    the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

### Rule 583.  Severance of Offenses or Defendants

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583.  Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime.

- 8 -

*Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003).

> The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.* (quoting *Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)) (internal citations omitted).

Reading these rules together, our Supreme Court established the following test for deciding whether a court should join or sever charges:

> [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these questions are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Collins, supra* (quoting *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 496-97 (1988)).  Pursuant to this test, "a court must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other."  *Collins, supra*.  Evidence of other crimes is not admissible solely to show the defendant's bad character or propensity to commit crimes.  *Commonwealth v. Dozzo*, 991 A.2d 898 (Pa.Super. 2010), *appeal denied*, 607 Pa. 709, 5 A.3d 818 (2010).

Nevertheless, evidence of other crimes is admissible to demonstrate:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

**Commonwealth v. Janda**, 14 A.3d 147, 156 (Pa.Super. 2011) (quoting **Commonwealth v. Morris**, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981)). Evidence of other crimes may also be admitted to exhibit the defendant's consciousness of guilt. **Commonwealth v. Selenski**, 919 A.2d 229 (Pa.Super. 2007), *aff'd*, 606 Pa. 51, 994 A.2d 1083 (2010) (stating: "[T]he offenses were properly consolidated, as evidence of the escape would be admissible in the homicide trial to show the Defendant's consciousness of guilt; evidence of the homicide would be admissible in the escape trial to show the Defendant's motive for escaping…"). "Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts." **Dozzo, supra** at 902 (quoting **Collins, supra** at 55, 703 A.2d at 423).

Instantly, the Commonwealth charged Appellant at Docket No. 3158-2018 for offenses relating to the August 2, 2018 assault of Victim and her unborn child. The Commonwealth later charged Appellant at Docket No. 2136-2019 with the witness intimidation-related offenses for his actions while

in prison between August 25, 2018 and March 10, 2019. Here, the assault-related charges were admissible to establish motive for the witness intimidation charges, and the witness intimidation charges were admissible to show consciousness of guilt for the assault-related charges. *See Janda, supra*; *Selenski, supra*. Furthermore, the entire series of events was admissible in a trial on each docket to tell the complete sequence of events or chain of actions. *See* Pa.R.Crim.P. 582; *Dozzo, supra*. Additionally, the jury could easily separate the evidence where each case involved separate and distinct allegations that occurred on different dates, at different locations, and involved different police witnesses. Thus, Appellant failed to show how he suffered the requisite prejudice by trying the charges at both dockets together, and the court did not abuse its discretion in granting the Commonwealth's motion for joinder. *See Cousar, supra*; *Dozzo, supra*.

In his second issue, Appellant argues the trial court erred in granting the Commonwealth's motion to admit Appellant's past abuse/prior bad acts during its case-in-chief. Appellant contends the Commonwealth's introduction of evidence that Appellant had punched Victim in the stomach on a prior occasion goes directly to what Pa.R.E. 404(b)(1) attempts to limit: "that [Appellant] on a 'particular occasion acted in accordance with [his] character.'" (Appellant's Brief at 15). Appellant further maintains that evidence of prior bad acts, such as Victim's testimony that Appellant hit her with his cane and placed her in a chokehold, was inflammatory and prejudicial. Appellant

- 11 -

concludes the court's ruling on the Commonwealth's motion *in limine* was improper, and this Court should remand for a new trial. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. *Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa.Super. 2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

Pennsylvania Rule of Evidence 404(b) provides:

**Rule 404.  Character Evidence; Crimes or Other Acts**

\* \* \*

**(b)   Crimes, Wrongs or Other Acts.**

*(1)   Prohibited Uses.*  Evidence of a crime, wrong, or other

act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\* \* \*

Pa.R.E. 404(b)(1)-(2). "[E]vidence of prior crimes is not admissible for the **sole** purpose of demonstrating a criminal defendant's propensity to commit crimes." **Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1283 (Pa.Super. 2004) (*en banc*) (emphasis added). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." **Id.** Specifically, evidence of other crimes or bad acts is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501 (2005), *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006). When offered for a legitimate purpose, evidence of prior crimes or bad acts is admissible if its probative value outweighs its potential for unfair prejudice. **Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657 (2014), *cert. denied*, 574 U.S. 863, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014).

Instantly, in addressing this issue, the trial court reasoned as follows:

Here, ...Appellant was charged with one count of Aggravated Assault of an Unborn Child for swinging at...Victim's pregnant abdominal area. Appellant was charged with Terroristic Threats for the statement, "I'm going to make you bleed that baby out your ass." Also, ...Appellant was charged with Simple Assault for punching...Victim in the head. This court allowed...Victim to testify regarding the prior abuse she received at the hands of...Appellant because the prior abuse was not only relevant, but it went to the intent, malice, ill-will, and absence of mistake of...Appellant. The prosecutor provided notice of his intent to use...Appellant's prior abuse in the Commonwealth's case-in-chief by means of his Motion *in Limine* filed prior to the start of trial. In addition, the court proffered a limiting instruction when charging the jury. In accordance with the Pennsylvania Standard Criminal Jury Instruction 3.08, [the court] stated:

> You have heard evidence tending to prove that [Appellant] was guilty of improper conduct for which he is not on trial. We're talking about...[V]ictim's allegations of past physical abuse. I'm speaking to the testimony to the effect that he previously physically abused [Victim]. That was her testimony. This evidence is before you for a limited purpose. Now, I want you to listen carefully. That is for the purpose of proving intent, absence of mistake or lack of accident. It is not to be considered by you in any way other than for that purpose. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies for which you might be inclined to infer guilt.

> Based on the aforementioned, we believe that allowing the evidence of Appellant's prior abuse of...Victim was proper and, therefore, this court did not commit an error by granting the Commonwealth's Motion *in Limine*.

(Trial Court Opinion at 14-15) (internal citation omitted). We agree with the trial court's analysis. Here, the Commonwealth presented evidence of Appellant's past abuse/prior bad acts for purposes other than to demonstrate

Appellant's propensity to commit such crimes. *See* Pa.R.E. 404(b)(1)-(2); ***Melendez-Rodriguez, supra***. Additionally, the trial court issued a limiting instruction, which minimized the likelihood that the jury convicted Appellant on an improper basis. ***See Commonwealth v. Mollett***, 5 A.3d 291, 313 (Pa.Super. 2010), *appeal denied*, 609 Pa. 686, 14 A.3d 826 (2011) (reiterating that juries are presumed to follow court's instructions). Thus, Appellant's second issue warrants no relief. ***See Montalvo, supra***.

In his third issue, Appellant argues the trial court erred in denying his motion for judgment of acquittal as to aggravated assault of an unborn child, where the Commonwealth failed to establish all of the elements of the offense. Appellant contends Victim's injury was minimal and required no hospitalization. Appellant maintains Victim did not suffer a serious bodily injury, but simply sustained a "knot" on her forehead. Although Victim testified that Appellant swung at her stomach and she only avoided the punch by falling back onto a bed, Appellant avers that a single punch that did not touch Victim was insufficient to prove a serious bodily injury. Appellant contends the punch must have been "slow and lack[ing in] intent to cause harm" as Victim (at nine months pregnant) was able to dodge the punch. (Appellant's Brief at 18). Additionally, Appellant emphasizes that the record provides no testimony concerning any subsequent punches. Appellant further maintains that his statement, "I'm going to make the baby bleed out your ass," was "the kind of verbal threat which expresses transitory anger rather

than expressing a settled purpose to carry out the threat." (*Id.*) Appellant concludes that he lacked the requisite intent to support a conviction for aggravated assault of an unborn child, and this Court should remand for a new trial. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson*, 947 A.2d 800, 805-06 (Pa.Super. 2008), *appeal denied*, 602 Pa. 663, 980 A.2d 606 (2009) (quoting *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006), *appeal denied*, 592 Pa. 778, 926 A.2d 972 (2007)) (emphasis omitted). "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction

on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Hutchinson, supra** at 805.

The Pennsylvania Crimes Code defines aggravated assault of an unborn child, in relevant part, as follows:

### § 2606.  Aggravated assault of unborn child

**(a)   Offense.**—A person commits aggravated assault of an unborn child if he attempts to cause serious bodily injury to the unborn child or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the life of the unborn child.

18 Pa.C.S.A. § 2606(a).  "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another."  **Commonwealth v. Gruff**, 822 A.2d 773, 776 (Pa.Super. 2003), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004).  "Serious bodily injury" is defined as, "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

Instantly, the trial court explained:

This court agreed with the Commonwealth's argument that the testimony established that Appellant attempted to swing at…Victim's pregnant abdominal area and it was the intent of…Appellant to do so.  Appellant voiced his intent when he stated "I'm going to make you bleed that baby out your ass."  …Victim stated that prior abuse had occurred,

including incidents during her early stages of pregnancy where…Appellant said he would "get" her an abortion. In one call, …Appellant told…Victim, "I hope your baby dies in his fucking sleep." On August 2, 2018, Appellant's first "swing" was not "a miss of a punch" when…Appellant intended to, and successfully, hit…Victim in the head with a closed fist.

Based on these facts, this court found that the Commonwealth proffered sufficient facts regarding Appellant's attempt and intent required for establishing the charge of Aggravated Assault of an Unborn Child. Therefore, we believe that this court did not commit an error when we denied [Appellant]'s Motion for Judgment of Acquittal.

(Trial Court Opinion at 16-17). We agree with the trial court's analysis. Viewed in the light most favorable to the Commonwealth as verdict winner, Appellant's words and actions demonstrated his intent to harm Victim's unborn child and were sufficient to sustain Appellant's conviction for aggravated assault of an unborn child. *See* 18 Pa.C.S.A. § 2606(a); *Hutchinson, supra*.

In his fourth issue, Appellant argues the Commonwealth relied solely on Victim's incredible testimony to convict Appellant. Appellant emphasizes that Victim omitted Appellant's alleged statement that, "I'm going to make the baby bleed out your ass," when she initially spoke to police and did not mention it until several hours after the incident. (Appellant's Brief at 20). Appellant further highlights Victim's testimony that Appellant was able to punch her in the forehead but was unable to make contact with her nine-month pregnant stomach. Appellant maintains it is implausible that Victim was "unable to get her face out of the way of [a] punch, but with ease can fall

back and roll upon a bed to avoid a punch to her protruding belly." (**Id.**) Due to Victim's unreliable testimony, Appellant concludes the verdict was not supported by the weight of the evidence, and this Court should remand for a new trial. We disagree.

Generally, a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

### Rule 607. Challenges to the Weight of the Evidence

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." **Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. **Commonwealth v. Burkett**, 830 A.2d 1034 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a)

opinion. ***Id.***

Instantly, Appellant raised his weight claim for the first time in his Rule 1925(b) statement. ***See id.*** Thus, Appellant's fourth issue on appeal is waived. ***See*** Pa.R.Crim.P. 607; ***Gillard, supra***; ***Burkett, supra***. Accordingly, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/21